ATKINSON v ATKINSON

Docket No. 93215. Submitted November 17, 1986, at Detroit. Decided June 8, 1987. Leave to appeal applied for.

Plaintiff, Harold J. Atkinson, and defendant, Terri N. Atkinson, were divorced pursuant to a judgment of the Oakland Circuit Court, Richard D. Kuhn, J. Custody of the only child born during their marriage, James Baird Atkinson, was awarded to defendant and plaintiff was denied visitation privileges after a human leukocyte antigen blood test supported defendant's claim that plaintiff was not the father of the child. Plaintiff appealed, claiming: (1) he should not have been compelled to submit to the HLA blood test; (2) evidence of the HLA blood test results were improperly admitted because an insufficient foundation was laid; (3) the trial court erred in treating him as a third party on the basis of the absence of a biological relationship between the child and himself, rather than as the child's father when deciding custody and visitation; (4) the trial court abused its discretion in ordering him to pay part of defendant's attorney fees; and (5) the trial court erred in refusing to allow the testimony of an expert witness who had completed a psychological evaluation of the child and who would have testified as to the psychological damage that separation from plaintiff would cause the child.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Bastards §§ 10, 11, 19, 32, 33, 38, 45 *et seq.*

Am Jur 2d, Depositions and Discovery § 70.

Am Jur 2d, Divorce and Separation §§ 589, 591, 974 *et seq.*; 1098-1100.

Authority of divorce court to award prospective or anticipated attorney' fees to enable parties to maintain or defend divorce suit. 22 ALR4th 407.

Determination of paternity, or legitimacy in an action for divorce, separation, or annulment. 65 ALR2d 1381.

Presumption of legitimacy, or of paternity, of child conceived or born before marriage. 57 ALR2d 729.

Who may dispute presumption of legitimacy of child conceived or born during wedlock. 53 ALR2d 572.

Blood group tests. 46 ALR2d 1000.

1. The strong presumption of legitimacy that attaches to a child born during a marriage may be rebutted by clear and convincing evidence offered by either the father or the mother.

2. It is within a trial court's power in a divorce case to order the husband to submit to an HLA blood test in order to determine the paternity of a child born during the marriage, given the extremely reliable nature of the test, the wife's right to present the best evidence when proving nonpaternity, and the court's role of determining the parentage of minor children.

3. Defendant's claim that plaintiff is not the child's father was made early in the proceedings. Thus, a representation by defendant of plaintiff's paternity upon which plaintiff may have relied could not have existed to serve as a basis for a claim by plaintiff of equitable estoppel.

4. A sufficient foundation was laid for the admission of the HLA test results. A medical technologist testified from personal knowledge as to the identification and labeling procedures used when samples are taken out of the locked box in which they are kept. Sufficient evidence was presented to show that the blood samples were those of the parties and of the child and that the HLA blood test results were reliable and relevant evidence.

5. A husband who is not the biological father of a child born or conceived during the marriage may be considered the natural father of that child where, as in this case, (1) the husband and the child mutually acknowledge a relationship as father and child, or the mother of the child has cooperated in the development of such a relationship over a period of time prior to the filing of the complaint for divorce, (2) the husband desires to have the rights afforded to a parent, and (3) the husband is willing to take on the responsibility of paying child support. The Court of Appeals remanded the case so that the trial court can reevaluate the question of custody and visitation, treating plaintiff as a natural parent of the child.

6. The trial court did not abuse its discretion in ordering plaintiff to pay part of defendant's attorney fees.

7. The trial court erred in refusing to permit plaintiff's expert to testify regarding a psychological evaluation of the child on the basis of defendant's objection that she was not notified that testimony by that expert would be offered. The Michigan Court Rules require no such notice, but provide that a party may request such notice through interrogatories. No request was made in this case. Additionally, plaintiff had requested a de novo hearing following a hearing before a Friend of the Court referee, during which the expert had

testified. Thus, plaintiff was deprived of a full de novo hearing by the court's ruling in this regard.

Remanded.

1. PARENT AND CHILD — CHILDREN BORN OUT OF WEDLOCK — PRE-
SUMPTIONS — LEGITIMACY.

The strong presumption of legitimacy that attaches to a child born during a marriage may be rebutted by clear and convincing evidence offered by either the father or the mother.

2. DIVORCE — PATERNITY — BLOOD TYPING TESTS.

It is within a circuit court's power in a divorce case where the wife claims her husband is not the father of a child born or conceived during the marriage to order the husband to submit to a human leukocyte antigen blood test in order to determine the paternity of the child, given the extremely reliable nature of the test, the wife's right to present the best evidence when proving nonpaternity and the court's role of determining the parentage of minor children.

3. EVIDENCE — PATERNITY — BLOOD TYPING TESTS.

The results of human leukocyte antigen blood tests are admissible as proof of paternity or nonpaternity when it is established that the blood tested was in fact that of the mother, child and putative father, and that the test results were based on reliable blood samples.

4. DIVORCE — CHILD CUSTODY.

A court, when determining custody and visitation, may consider a husband who is not the biological father of a child born or conceived during the marriage as the natural father of the child where (1) the husband and the child mutually acknowledge a relationship as father and child, or the mother of the child has cooperated in the development of such a relationship over a period of time prior to the filing of the complaint for divorce, (2) the husband desires to have the rights afforded to a parent, and (3) the husband is willing to take on the responsibility of paying child support.

5. DIVORCE — ATTORNEY FEES.

The award of attorney fees in a divorce action is within the discretion of the trial court to enable a party to carry on or defend the lawsuit and will not be disturbed on appeal absent an abuse of discretion (MCR 3.206[A]).

6. TRIAL — WITNESSES — COURT RULES.

A party is not required to supply the opposing party with a list of

the expert witnesses it expects to call at trial; however, a party may require the other party through interrogatories to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter about which the expert is expected to testify and a summary of the grounds for each opinion (MCR 2.302[4][a][i]).

*Michael A. Robbins* and *Richard S. Victor,* for plaintiff.

*Paul W. Harty, P.C.* (by *Paul W. Harty*), for defendant.

Before: SHEPHERD, P.J., and WAHLS and SULLIVAN, JJ.

WAHLS, J. Plaintiff, Harold J. Atkinson, appeals as of right from an Oakland Circuit Court judgment of divorce. The issues on appeal generally involve the award of custody of the couple's child to defendant, Terri N. Atkinson, the denial of visitation privileges to plaintiff, the award of attorney fees to defendant, and the refusal of the trial court to allow the testimony of an expert witness. We hold that a wife may establish the nonpaternity of a husband in a divorce action through use of blood testing, but that, notwithstanding the fact that the husband is not the biological father of a child born during the marriage, the husband may acquire rights of paternity under the theory of "equitable parent" and the analogous doctrine of "equitable adoption."

The parties were married on March 1, 1973. The only child of the marriage, James Baird Atkinson (Baird), was born on August 1, 1981. Defendant left the marital home with Baird on February 5, 1985, and, in March, 1985, plaintiff filed for divorce. During the divorce proceeding, defendant contended that plaintiff was not the biological father of Baird and plaintiff vigorously argued

that he was Baird's father. The trial court awarded defendant custody of Baird and attorney fees and denied plaintiff custody and visitation privileges.

Plaintiff's first argument is that he should not have been compelled to submit to a human leukocyte antigen (HLA) blood test to determine the paternity of a child he has always treated as his own.

The issue of whether the court in a divorce case may compel the husband to submit to blood testing in order to determine whether he is the biological father of a child born during the marriage has never been addressed by a Michigan appellate court. Originally, Michigan adhered to Lord Mansfield's Rule, which prohibited testimony by either spouse in a divorce action that showed a child born during the marriage to be illegitimate. *Serafin v Serafin,* 401 Mich 629; 258 NW2d 461 (1977). However, Michigan shifted away from that prohibition in *Serafin,* wherein the Supreme Court determined that the policy reasons behind Lord Mansfield's Rule of reducing the number of public charges and preserving family peace and harmony were no longer viable. The Court noted that illegitimacy is not held in such low regard as it use to be, and that state and federal laws now serve to lessen arbitrary distinctions formerly made between legitimate and illegitimate children. *Id.,* 636. See *Hackley v Hackley,* 426 Mich 582, 586; 395 NW2d 906 (1986). The Court also acknowledged the viability of the strong presumption of legitimacy that attaches to children born during a marriage, and held that this presumption may only be rebutted by clear and convincing evidence. *Serafin, supra,* 636. In other words, although the burden of proof is high, a putative parent may now rebut the legitimacy of a child born to the

couple during their marriage. Accordingly, defendant was entitled to offer evidence that plaintiff is not the biological father of Baird.

Plaintiff asserts that the trial court acted pursuant to the Paternity Act, MCL 722.711 *et seq.;* MSA 25.491 *et seq.,* in ordering him to submit to the test, and that since the purpose of the act is to provide for the support of minors, it was error to force him to submit to the test in this case. There is no indication in the trial court's order, however, that it was acting pursuant to the Paternity Act when it ordered the test. Furthermore, it is now well-established that in divorce actions the court may determine whether the husband is the father of the wife's child. MCL 552.16; MSA 25.96; *Lynch v Lynch,* 127 Mich App 34, 35; 338 NW2d 413 (1983); *Gonzales v Gonzales,* 117 Mich App 110, 114; 323 NW2d 614 (1982).

As noted above, in most cases where paternity of a minor child is at issue, the putative father is claiming that he is not the biological father and consequently not responsible for the child's financial support. Such was the case in *Serafin, supra,* where the Court stated:

> In our view the public peace and respect for the law are enhanced, not by arbitrarily assigning the duty of support to a man who is not the father of the child, *but by allowing him to contest paternity by his best evidence.* [401 Mich 635. Emphasis added.]

Similarly, in *Shepherd v Shepherd,* 81 Mich App 465, 470; 265 NW2d 374 (1978), this Court held that the plaintiff husband, who was challenging his paternity, should be able to present "his potential best evidence" to overcome the presumption of legitimacy; the results of blood grouping tests were therefore admissible. It is thus a natural extension

of the "best evidence" rule that a mother challenging the father's paternity should also be allowed to present her best evidence. The HLA test is extremely reliable in determining the parentage of a child. See *In re Flynn,* 130 Mich App 740, 760; 344 NW2d 352 (1983). This reliability, coupled with a mother's right to present the best evidence and the court's role of determining the parentage of minor children, leads us to the conclusion that it is within the court's power in a divorce case to order an individual to submit to an HLA blood test in order to determine paternity of a child born during the marriage.

Plaintiff also relies on the doctrine of equitable estoppel in arguing that he should not have been compelled to undergo the HLA testing. Equitable estoppel arises when one causes another, by acts, representations, or silence, intentionally or through culpable neglect, to believe in the existence of some material fact and to detrimentally rely on the existence of such fact. *Nygard v Nygard,* 156 Mich App 94; 401 NW2d 320 (1986). Although this theory may be applied to a divorce proceeding, equitable estoppel does not apply here. Defendant's claim that plaintiff is not Baird's biological father was made early in the proceedings. Thus, a representation by defendant of plaintiff's paternity upon which plaintiff may have relied could not have existed. *Id.; Johnson v Johnson,* 93 Mich App 415, 419; 286 NW2d 886 (1979). See *Hackley, supra,* 596.

Plaintiff's second contention is that the trial court erred in admitting the HLA blood test results because an insufficient foundation was laid. We disagree. The foundation requirements for the admission of HLA test results in a paternity action are that the blood tested was in fact that of the defendant, the plaintiff, and the child, and that

the test results were based on reliable blood samples. *Willerick v Hanshalli,* 136 Mich App 484, 488; 356 NW2d 36 (1984). This foundation includes establishing a chain of identification from the time the blood samples were taken to the time the samples were analyzed, either by direct or circumstantial evidence. *Id.; Zyskowski v Habelman,* 150 Mich App 230, 244-245; 388 NW2d 315 (1986), lv gtd 426 Mich 865 (1986).

In the present case, a medical technologist testified from personal knowledge as to the identification and labeling procedures for blood samples, and as to the procedures used when samples are taken out of the locked box in which they are kept. Sufficient evidence was presented to show that the blood samples were those of the parties and of Baird and that the HLA blood tests were reliable and relevant evidence. *Zyskowski, supra;* MRE 406.

Plaintiff's third argument is that the trial court erred in treating him as a third party because of the absence of a biological relationship between Baird and himself, rather than treating him as a parent due to the close father-son relationship the two shared, in deciding custody and visitation. In making this argument, plaintiff asks us to adopt the doctrine of equitable parent. This is a novel request. However, we find ample support in granting the request, especially in the present circumstances. Therefore, we adopt the dotrine of equitable parent and find that a husband who is not the biological father of a child born or conceived during the marriage may be considered the natural father of that child where (1) the husband and the child mutually acknowledge a relationship as father and child, or the mother of the child has cooperated in the development of such a relationship over a period of time prior to the filing of the

complaint for divorce, (2) the husband desires to have the rights afforded to a parent, and (3) the husband is willing to take on the responsibility of paying child support. We hold that the husband may be considered the equitable parent under these circumstances and remand this case in order to allow the circuit court to reevaluate custody and visitation, treating plaintiff as a natural parent of Baird.

The first thing we have considered in deciding to adopt this new doctrine is that the Child Custody Act "is equitable in nature" and its provisions are to be liberally construed, MCL 722.26; MSA 25.312(6). Therefore, a basis for fashioning an equitable parent doctrine is present.

Turning to the case law interpreting this act, it is generally recognized that biological parents are obligated by law to maintain and support their children. *West v West,* 241 Mich 679, 684; 217 NW 924 (1928); MCL 722.3; MSA 25.244(3), MCL 722.1(b); MSA 25.244(1)(b). Implicitly coupled with this duty is the right to custody or visitation. In this case, however, there is no biological relationship from which a support obligation may arise, *Magarell v Magarell,* 327 Mich 372, 376; 41 NW2d 898 (1950); *Nygard v Nygard, supra.* The reciprocal right to custody or visitation similarly does not arise because plaintiff is not treated as a "parent" under the Child Custody Act. See *Johnson, supra.*

However, we have recognized exceptions to this rule of first finding a biological relationship before imposing a support obligation. One exception is found in *Johnson, supra.* In that case, the plaintiff husband married defendant wife knowing that she was carrying a child who may or may not have been his offspring. Plaintiff husband thereafter held himself out as the father and supporter of the child for several years. This Court noted:

Plaintiff assumed the status of father of this child when the child was born and continued as such for ten years until he amended his divorce complaint at trial. As the child was born during the marriage while the parties lived together as husband and wife, it was not necessary for plaintiff to go through adoption proceedings. Conversely, after plaintiff has represented himself as the father of this child for nine to ten years, he may not now say that he was not.

On the facts of this case the Court is compelled to hold that plaintiff is estopped by his conduct to deny paternity of this child. [*Johnson, supra,* 419-420.]

See *Nygard, supra.* In other words, we recognize that a person who is not the biological father of a child may be considered a parent against his will, and consequently burdened with the responsibility of the support for the child. By the same token, in being treated as a parent, he may also receive the right of custody or visitation. It is the logical extension of *Johnson* to recognize that, under certain circumstances, a person who is not the biological father of a child may be considered a parent when he desires such recognition and is willing to support the child as well as wants the reciprocal rights of custody or visitation afforded to a parent. Such circumstances are present here. Baird was conceived and born during the parties' marriage. Plaintiff and Baird have always had a close and affectionate father-son relationship. Plaintiff is the only father Baird has ever known and is active in Baird's life. He desires to have the relationship continued and to have the rights accorded to a father, along with the responsibility of supporting the child. Defendant acknowledged at trial that plaintiff related to Baird as a father and that she waited until answering a question in interrogatories filed by plaintiff in the instant

divorce action before asserting that plaintiff was not Baird's biological father. Under this set of facts, plaintiff is clearly entitled to be treated as a natural father under the doctrine of equitable parent. Therefore, we are remanding for reevaluation of custody and visitation consistent with this decision.

In addition, the doctrine of equitable adoption provides support for plaintiff's requested relief. Michigan has long recognized the doctrine of equitable adoption in intestate succession. *Wright v Wright,* 99 Mich 170; 58 NW 54 (1894). Under this doctrine, an implied contract to adopt is found when a close relationship, similar to parent-child, exists between a child and the deceased. *Id.* See also *Steward v Richardson,* 353 F Supp 822, 825 (ED Mich, 1972). As a result, the child has a right to share in the deceased's estate. That doctrine has been codified in MCL 700.111; MSA 27.5111. Thus, Baird is plaintiff's heir. It is only logical that a person recognized as a natural parent in death should have the same recognition in life. The parent-child relationship here is similar to that found in equitable adoption situations. Therefore, a legal relationship akin to the doctrine of equitable adoption is present.

Furthermore, let us not forget that the best interest of the child is the major concern of any custody determination. MCL 722.25; MSA 25.312(5); *Hackley, supra,* 597. Plaintiff was married to Baird's mother when Baird was conceived and born. He has been a father to Baird in all respects. Following the parties' separation, he remained active in Baird's day-care program, school, and church. In fact, it appears that it was quite a shock for both plaintiff and Baird when it was revealed during the divorce proceedings that plaintiff was not Baird's biological father. Given such a

close relationship, it is unlikely that forbidding plaintiff from having custody or visitation rights is in Baird's best interest.

Plaintiff's fourth argument is that the trial court abused its discretion in ordering plaintiff to pay $3,500 of defendant's attorney fees. Necessary and reasonable attorney fees may be awarded to enable a party to carry on or defend a divorce action. *Zecchin v Zecchin,* 149 Mich App 723, 732; 386 NW2d 652 (1986). MCR 3.206(A). A trial court's award of attorney fees will not be disturbed on appeal absent an abuse of discretion. *Vaclav v Vaclav,* 96 Mich App 584, 593; 293 NW2d 613 (1980).

We find no abuse. Plaintiff's income is approximately $55,000 per year. Defendant's income is approximately $9,600 per year. Plaintiff's attorney fees amounted to $46,000, and defendant's were $20,000, at the time of trial. There was a sufficient showing that defendant was in need of financial assistance in order to defend this divorce action.

Plaintiff's fifth argument is that the trial court erred in refusing to allow the expert testimony of Dr. Haynes. We agree.

The issue of custody was referred to the Oakland County Friend of the Court for a referee hearing. Plaintiff was dissatisfied with the referee hearing and requested a de novo hearing pursuant to MCL 551.507(5); MSA 25.176(7)(5).

At trial, plaintiff called as his first witness Dr. Jack Haynes, who had performed a psychological evaluation of Baird. Dr. Haynes was to testify as to the psychological damage that separation from plaintiff would cause Baird. Defendant objected on the ground that plaintiff had not given notice that Dr. Haynes' expert testimony would be offered. The trial court sustained defendant's objection, stating that "[t]he Court's not going outside of the

hearing which they had in front of the Friend of the Court." The court also refused to rule that Dr. Haynes could testify later in the trial.

There is no requirement in the Michigan Court Rules that a party must supply a list of the expert witnesses that the party expects to call at trial. A party may

> through interrogatories require another party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter about which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. [MCR 2.302(4)(a)(i).]

There is no claim in the present case that defendant requested from plaintiff a list of the expert witnesses that plaintiff intended to call. The trial court erred in refusing to admit the testimony of Dr. Jack Haynes, and deprived plaintiff of a full de novo trial. Dr. Haynes' testimony may have made a difference in the outcome of this case. Therefore, the error cannot be considered harmless.

Remanded.