IN RE the MARRIAGE OF D.L.J. and R.R.J.: J.J., Appellant,

v.

R.J., Respondent.

Court of Appeals

*NO. 89-1142. Submitted on briefs September 7, 1990.—Decided April 11, 1991.*

(Also reported in 469 N.W.2d 877.)

For the appellant the cause was submitted on the briefs of *Reesa Evans* of Madison.

A nonparty brief was filed on behalf of R.J., by *Deborah Mulligan* of *Legal Action of Wisconsin, Inc.* of Madison.

For the respondent, D.J., the cause was submitted on the brief of *Stan C. Johnson* of Monona.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J. J.L.J., a minor, by her guardian ad litem, appeals from that part of a divorce judgment "which terminated the parental rights of [the husband]"[1] and denied visitation between her and the husband. We conclude that denial of visitation between a child and the alleged father in a divorce proceeding does not terminate the alleged father's parental rights. We further conclude that the mother is equitably estopped from contesting the child's paternity in these proceedings. Because the child does not seek to determine her paternity, we remand the cause to the circuit court to determine visitation between the child and the husband under sec. 767.245(1), Stats. (1985–86).

---

[1]The husband filed a "respondent's" brief. He asks that we reverse the judgment and would therefore be an appellant. Because he did not appeal from the judgment, he is not a party to this appeal. We accept his brief as a nonparty brief under Rule 809.19(7), Stats.

## I.
## BACKGROUND

The mother, D.J., began this divorce action May 25, 1984. The parties reconciled and separated frequently. On June 29, 1987, while the parties were together, J.L.J. was born to D.J. On September 1, 1987, the husband moved the court to direct the Dane County Family Court Counseling Service to conduct an investigation regarding the child's safety and to award custody to him. On October 6, 1987, the family court commissioner ordered the Family Court Counseling Service to conduct a custody and visitation study.

On October 8, 1987, the circuit court appointed a guardian ad litem to appear for the child. On October 12, the family court commissioner entered a stipulated amended temporary order giving physical custody of the child to the mother and visitation to the husband.

On February 26, 1988, upon the mother's motion and over the guardian ad litem's objection, the family court commissioner, under sec. 767.48, Stats., ordered the husband, the mother and the child to submit to blood tests to determine the child's paternity. In her affidavit in support of her motion, the mother averred that she had engaged in sexual intercourse with two males other than her husband during the conceptive period. She further averred, "I do not believe I engaged in sexual intercourse with my spouse . . . during the conceptual period and I do not believe him to be the natural father of [the child]."

The blood tests excluded the husband as the child's father. On May 6, 1988, upon the mother's motion, and over the objections of the guardian ad litem and the husband, the family court commissioner terminated visitation between the child and the husband. The commis-

sioner found that the husband was excluded as the child's biological father and that, "[the husband] has no visitation rights under section 767.245 Wis. Stats., wherefore there is no statutory basis to continue visitation between [the husband] and [the child]." On April 28, 1988,[2] and again shortly before trial, on February 13, 1989, the husband moved the court to review the order terminating visitation and to exclude the results of the blood tests.

The guardian ad litem recommended that the court declare the husband to be the child's legal father. She recommended that physical placement of the child remain with her mother but that the court consider joint legal custody and that the husband have frequent visitation with the child. Alternatively, if the court did not declare the husband the child's legal father, the guardian ad litem recommended that the court find him to be a "significant person" in the child's life and order visitation between the child and the husband.

At the divorce hearing on February 20, 1989, the circuit court denied the guardian ad litem's motion for a continuance, denied the husband's motion to exclude from evidence the results of the blood tests, granted the mother's petition for divorce, dismissed the husband's motion for custody, and found that the husband was not the child's biological father. In the second part of the trial, the court received evidence on visitation under sec. 767.245(1), Stats. (1987–88).[3] That part of the trial was

___

[2]The husband asked for *de novo* review of the order terminating visitation after the hearing, but before the family court commissioner had reduced his order to writing.

[3]The parties and the trial court incorrectly assumed that the revised statute applied to this action. The revision of sec. 767.245, Stats., by 1987 Wis. Act 355 applies to actions begun on or after May 3, 1988. *See* sec. 73, 1987 Wis. Act 355, and sec. 5, 1987 Wis.

completed March 23, 1989.

On June 6, 1989, the court entered its findings of fact, conclusions of law and judgment. The court found that "[the husband] is not a significant other person in his relationship with [the child]." The court concluded that, "[t]he [husband] is not the biological father of the child and the record does not contain evidence showing that bonding between the child and [the husband] exists or that it would be detrimental to the best interest of the child to terminate [the husband's] contact with the child," and "[the husband] does not meet the standard of an equitable parent." The court therefore denied visitation between the child and the husband.

## II.
## TERMINATION OF PARENTAL RIGHTS

■.

The child and the husband argue that the effect of the family court commissioner's order terminating visitation between the child and the husband was to terminate the husband's parental rights until the final hearing months later. The child argues that until she is adjudged a nonmarital child under sec. 891.39(3), Stats., the husband is her legal parent. The child claims that the husband was entitled to all rights of a parent under the termination of parental rights statutes, including the right to a jury trial and the right to appointed counsel. We conclude that the denial or termination of visitation between a child and an alleged father in a divorce pro-

---

Act 364. Section 767.245(1), Stats. (1987–88) provides in part: "Upon petition by a . . . person who has maintained a· relationship similar to a parent-child relationship with the child, the court may grant reasonable visitation rights to that person if the parents have notice of the hearing and if the court determines that visitation is in the best interest of the child."

ceeding does not constitute termination of parental rights and is not subject to the statutory procedure for the termination of parental rights.

Section 48.40(2), Stats., provides: " 'Termination of parental rights' means that, pursuant to a court order, all rights, powers, privileges, immunities, duties and obligations existing between parent and child are permanently severed." The denial or termination of visitation between a child and an alleged father in a divorce proceeding does not permanently sever the rights, powers, privileges, immunities, duties and obligations existing between the alleged parent and the child. We therefore reject the child's and the husband's claim that the family court commissioner's order terminating visitation between the child and the husband temporarily terminated whatever parental rights the husband may have had.

## III.
## EQUITABLE ESTOPPEL

The child contends that it is not in her best interest to determine that the husband is not her natural father. She claims that he is her "equitable parent" and that the circuit court should have declared that he is her legal father. The circuit court accepted that there is an established and recognized "equitable parent" doctrine based on *In re D.L.H.*, 142 Wis. 2d 606, 419 N.W.2d 283 (Ct. App. 1987) and *Atkinson v. Atkinson*, 408 N.W.2d 516 (Mich. Ct. App. 1987). It did not explain why the husband did not meet the "equitable parent" standard.

In *In re D.L.H.*, the mother brought an action to determine the paternity of a child born during the mother's marriage to D.H. Court-ordered blood tests

excluded D.H. as the child's biological father and he was dismissed from the action. Upon his appeal, we concluded that equitable estoppel was available as a defense to the mother's paternity proceeding. We reversed and remanded for the trial court to determine whether the elements of equitable estoppel were met. We relied on *Atkinson,* but did not address the issue decided in *Atkinson*—that the "equitable parent" doctrine operates to elevate the husband in a divorce proceeding from third-party status to natural parent status.

We have also held that the doctrine of equitable estoppel may be applied to bar the nonbiological father in a divorce action from denying paternity in order to avoid child support obligations. *In re A.J.N. & J.M.N.,* 141 Wis. 2d 99, 414 N.W.2d 68 (Ct. App. 1987). Many jurisdictions have articulated a theory of equitable estoppel specifically applicable to child support proceedings. *Id.* at 103, 414 N.W.2d at 70.

This case is unusual in that the husband is willing to assume the obligation to support the child, even if he is not the child's biological parent. In fact, in the trial court, he sought custody of the child. The situation presented here is therefore substantially similar to that presented in *Atkinson,* except that the child in *Atkinson* was older than J.L.J. In *Atkinson,* the child was conceived and born during the parties' marriage. Blood tests, however, excluded the husband as the child's biological father. The husband and the child maintained a father-son relationship. The father desired to have the relationship continue and to have the rights accorded to a father, along with the responsibilities of supporting the child. The mother acknowledged that the husband related to the child as a father and that she had waited until answering a question in interrogatories before asserting that the husband was not the child's biological

father. Under these facts, the Michigan court concluded that the husband was entitled to be treated as a natural father under the "equitable parent" doctrine. The court therefore remanded the cause for redetermination of custody and visitation.

In this case, there are undisputed and found facts which are not clearly erroneous as to the functioning of the mother, father and child as a family. The husband and mother lived together during at least part of the mother's pregnancy. The husband attended "birthing" classes with the mother. The husband made the arrangements with the doctor and the hospital for the child's birth. He was with the mother in the delivery room during the birth. The mother gave the husband's name as the father, for the birth certificate. The name given the child was one chosen by the mother and the husband some years before, in anticipation of having a child. After the child came home, the husband fed her, changed her, bathed her, and "[t]ook care of her any way she needed." The husband bought the child food and clothing. The child called him "dada," seemed to enjoy his company and played with him.

After their separation, the mother stipulated that the husband should have generous visitation, which he exercised at every opportunity. The mother conceded that the husband saw the child "a lot" on weekends. Even after formal visitation was terminated, the husband continued to have frequent contact with the child. He frequently stayed overnight with the mother and the child. The husband's fiance, the husband's former foster child, his roommate, and a friend, testified that the husband interacted with the child in a father-child way. His former foster child, who lived with the husband, testified that the husband "[s]eemed to be [the child's] father." The husband's relationship with the child as the child's

father was an active relationship which existed from the child's birth, June 29, 1987, until the late summer of 1988.

It was not until the husband filed his motion for custody, which he alleged was prompted by his concern for the child's safety because of the mother's drinking, that the mother first claimed that the husband was not the child's natural father.

Where the facts are undisputed or not clearly erroneous, whether they permit application of the doctrine of equitable estoppel is a question of law. *See In re A.J.N. & J.M.N.*, 141 Wis. 2d 99, 103, 414 N.W.2d 68, 70 (Ct. App. 1987) (whether trial court may apply doctrine of equitable estoppel is question of law which we decide without deference to the trial court). We conclude that on the facts of this case, the mother is estopped, on equitable principles, from seeking a declaration in these proceedings that the husband is not the child's natural parent.

Our conclusion does not, however, end our inquiry. The child's interest is separate and distinct from the interest of the mother and husband. *Riemer v. Riemer*, 85 Wis. 2d 375, 379, 270 N.W.2d 93, 96 (Ct. App. 1978). That interest must be represented when legal custody or paternity is contested. Section 767.045, Stats. (1985–86). Section 767.045 provides that "[t]he guardian ad litem shall be an advocate for the best interests of the child or children and consider the factors under s. 767.24." "The guardian *ad litem* appointed for the minor children is an advocate and legal representative to protect the interests of the minor children whom he represents and must advance the best interest of such children." *Riemer,* 85 Wis. 2d at 379, 270 N.W.2d at 96.

Here, the guardian ad litem advised the court that it was not in the child's best interest to determine her paternity. She recommended that the court find that the husband is the child's natural father, and continue physical placement of the child with the mother, but consider joint legal custody and frequent visitation between the child and the husband. Unless on remand the child seeks to have her paternity determined, the husband shall be considered the child's equitable parent for purposes of these proceedings.

## IV.
## DIRECTIONS ON REMAND

On remand, the circuit court shall determine reasonable visitation between the child and the husband under sec. 767.245(1), Stats. (1985–86), which provides: "A parent is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical, mental or emotional health." We do not consider that the child's notice of appeal includes that part of the judgment awarding custody of the child to the mother.

The parties may agree to have the issue of visitation determined as physical placement under sec. 767.24, Stats. (1988–89). *See* sec. 767.24(9), Stats. (1988–89).

*By the Court.*—Judgment reversed in part and cause remanded for further proceedings consistent with this opinion.