Marcie A. WITTIG, on behalf of herself
and as Next Friend of and on behalf
of Matthew J. Peake, Plaintiffs,

v.

Donna E. SHALALA, Secretary of Health
and Human Services, Defendant.

No. 5:92–CV–116.

United States District Court,
W.D. Michigan,
Southern Division.

Feb. 14, 1994.

LaRae G. Munk, Law Office of LaRae G. Munk, P.C., Beulah, MI, for plaintiffs.

Michael L. Schipper, Asst. U.S. Atty. and Michael H. Dettmer, U.S. Atty., Grand Rapids, MI, for defendants.

## OPINION

QUIST, District Judge.

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health and Human Services denying plaintiffs' claim for children's benefits.

The final decision of the Secretary is now before the Court for review pursuant to motions for summary judgment filed by both parties. Section 205(g) of the Act, *supra,* limits the court to a review of the administrative record and provides that the Secretary's decision shall be conclusive if it is supported by substantial evidence. The Secretary has found that plaintiff Matthew Peake is not a child within the meaning of the Act. The issues before the court are whether the Secretary used the proper legal standard in making this determination, and whether 20 C.F.R. § 404.357, which defines the term "stepchild" as used in the Act, is constitutional. Because I find that defendant used the proper legal standard in determining Matthew Peake was not a stepchild as set forth in the Act, and that the definition of stepchild set forth in the Code of Federal Regulations is constitutional, Defendant's Motion for Summary Judgment shall be GRANTED.

## STATEMENT OF FACTS

Marcie Wittig has been found disabled as defined by the Social Security Act. Her onset date of disability is June 30, 1985. She has been receiving disability insurance benefits as a result of this determination.

Marcie Wittig married Raymond Wittig on July 27, 1970. Matthew James Peake was born on July 29, 1988. His mother is Lisa M. Peake. On April 24, 1989, Raymond was determined to be Matthew Peake's father. He was ordered to pay $20 per week in child support to Matthew Peake. Thereafter, on August 2, 1989, Raymond filed a petition to obtain custody of Matthew Peake. On January 9, 1990, a Stipulation and Order modifying custody was entered in the Circuit Court for the County of Mecosta. Raymond was given physical custody of Matthew Peake, and was ordered to be primarily responsible for the day-to-day upbringing, care, guidance and control of Matthew Peake. Lisa Peake and Raymond were given joint legal custody of Matthew Peake. Both natural parents were to share in the important decisions affecting Matthew, including decisions regarding his education and medical treatment. It was further ordered that Lisa Peake was not obligated to pay child support due to her lack of income at that time. However, if her financial circumstances changed at a later date, child support could be ordered. Lisa Peake was also granted visitation rights, including one four-day weekend a month, one full week a month, three weeks during the summer, and alternating major holidays.

Matthew Peake has lived with Raymond and Marcie Wittig since early in 1990. The record contains no indication that Ms. Wittig has attempted to adopt Matthew Peake.

On November 6, 1990, Marcie Wittig filed an application for child's insurance benefits. Her application was denied on December 10,

1990. She was once again denied when she requested reconsideration. On October 9, 1991, Ms. Wittig requested that the expedited appeals process be used, because the facts in the claim for benefits are not in dispute. On February 18, 1992, Administrative Law Judge William Decker denied plaintiffs' request for a hearing. On July 28, 1992, the Appeals Council denied plaintiffs' request for review of the dismissal of the case. On October 2, 1992, plaintiffs filed their complaint in this court. Plaintiffs' complaint presents two issues for resolution: Whether Matthew Peake is a stepchild of Marcie Wittig for the purposes of disability insurance benefits; and if not, whether the Secretary's regulation defining "stepchild" violates the Fifth Amendment because it discriminates against "illegitimate" children.[1]

### ANALYSIS

*Is Matthew Peake a Stepchild of Marcie Wittig for the Purposes of Child's Benefits Under the Social Security Act?*

■ A child of an insured individual for disability insurance benefits is entitled to child's insurance benefits. 42 U.S.C. § 402(d). In order to qualify, the claimant must meet the definition of child set forth in the Social Security Act. 42 U.S.C. § 416(e). The natural child of an insured individual, a legally adopted child of an insured individual, a stepchild of an insured individual, or a grandchild or step-grandchild of an insured individual or his or her spouse are presumed to be dependent on that insured individual, and hence a child for the purposes of the Social Security Act. *Id.* In order to qualify as a stepchild, that person must have been a stepchild for not less than one year immediately preceding the day the application for child's insurance benefits was filed.

The Social Security Act does not set forth the definition of a stepchild for purposes of social security benefits. The Act does state that in determining whether an applicant is a child of an insured individual the law of intestate succession of the State where the insured individual is domiciled at the time of filing the application for benefits is applied. 42 U.S.C. § 416(h)(2)(A).

In determining that Matthew Peake is not the stepchild of Marcie Wittig, the Secretary relied upon 20 C.F.R. § 404.357. That regulation provides that the claimant is a stepchild only if the natural or adopting parent married the insured individual after the birth of the claimant. If sole reference is made to this regulation in order to define stepchild, Matthew Peake is not the stepchild of Marcie Wittig. Similarly, any adulterine child conceived or born by the insured individual's spouse during an insured individual's marriage could not be considered a stepchild.

Only two circuits have addressed the first issue presented in this case. In *Hutcheson v. Califano*, 638 F.2d 96 (9th Cir.1981), the Court held that under the laws of the State of Washington, the child would be deemed a stepchild of the insured individual, and therefore was entitled to children's benefits. In *Hutcheson*, the child was born in New Jersey in 1973, although the mother and the insured individual had separated one year previously. They had been married since 1970. Another male was listed as the father on the child's birth certificate. The mother and child returned to live with the insured individual in 1974, and he legally adopted the child on May 16, 1974.

Critical to the Ninth Circuit's holding was its determination that "[m]ost family relationships are defined in the Act by reference to the law of the state of domicile." *Id.* at 98. The Ninth Circuit then referred to Washington law in determining that the state would define the child as a stepchild of the insured individual, despite the fact the child was conceived and born outside of the existing marital relationship. Washington's adoption statutes "unambiguously" defined a stepchild as "a child of the petitioner's spouse who is not a child of the petitioner." *Id.* at 99. In Washington, "unlike many other states," a stepparent had the same duty of supporting the child as did the parent during the existence of the marriage of the stepparent to the child's parent. Moreover, the stepparent

---

1. I use the term "illegitimate" in an historic and narrow sense to describe a child conceived and born of parents who are not married to each other. This word is not used in a pejorative sense.

could be held criminally liable for failure to support the stepchild. *Id.* at 99.

The Fifth Circuit came to a different conclusion in *B.B. v. Schweiker,* 643 F.2d 1069 (5th Cir.1981). In that case, the wife of the insured individual gave birth to an illegitimate child while her husband was overseas in the military service. The Fifth Circuit held the child was not a stepchild under the Social Security Act, despite the fact the couple remained married and lived with each other after the birth of the child, and the insured individual raised and supported the child, holding the child out as his own. In deciding the claimant was not the stepchild of the insured individual, the Fifth Circuit first referred to Georgia intestacy statutes, which provided little guidance. Next, the Fifth Circuit referred to social security regulations, which at that time offered little guidance. Third, the court referred to the meaning given to the term stepchild in different jurisdictions. Finally, the Fifth Circuit paid great deference to Social Security Ruling 66–11, which provided that a child of an adulterous relationship is not the stepchild of the parent's spouse. *Id.* at 1070–71. In conclusion, the Fifth Circuit held that arguments to grant benefits to adulterine children must be addressed to Congress. *Id.* at 1071.

I find the Fifth Circuit case in *Schweiker* to be closer to the case before this Court. Plaintiffs urge this Court to liberally construe § 416(h), as did the Ninth Circuit in *Hutcheson,* so that the "equitable parent" doctrine set forth in *Atkinson v. Atkinson,* 160 Mich.App. 601, 408 N.W.2d 516 (1987), may be used to find that Matthew Peake is the stepchild of Marcie Wittig. However, I am not free to roam through a state's family law jurisprudence in order to reach a decision that I may or may not believe to be socially desirable. The *Hutcheson* court relied on state law, while citing to 42 U.S.C. §§ 416(h)(1)(A) and 416(h)(2)(A). However, my review of these sections of the Act reveals that § 416(h)(1)(A) pertains solely to determining whether an applicant for benefits is the wife, husband, widow, or widower of an insured individual. This section does not support resort to the full range of state family law in order to determine parental or

child status. Section 416(h)(2)(A) is explicit in providing that only state intestate law shall be used in order to determine whether an applicant is a natural child or parent of a currently insured individual. The relevant regulation, 20 C.F.R. § 404.355, is consistent with this mandate, providing that intestate law is to be used in determining whether a claimant is the insured individual's natural child.

■ Even assuming Michigan's intestate statute would govern in determining whether Matthew Peake is Marcie Wittig's stepchild, I still conclude that plaintiffs would not prevail. The Michigan intestate statute does not define a stepchild as an heir of the wife of his father. To the contrary, a child is determined to be the heir of each of his natural parents. M.C.L.A. 700.111(1). In this case then, Matthew Peake is the heir of Raymond Wittig and Lisa Peake, not of Marcie Wittig. Matthew Peake could become an heir if and when Marcie Wittig adopts him. M.C.L.A. 700.110(3). However, the record reveals no effort in this regard.

Plaintiffs urge that other sections of the Michigan Compiled Laws support a conclusion that Michigan state courts would find Matthew Peake to be a stepchild of Marcie Wittig. As an example, plaintiffs cite to M.C.L.A. 421.27(b)(3). However, this statute merely refers to the term stepchild in the course of identifying who is a dependent, without defining who is and is not a stepchild. Probative of how Michigan courts would define a stepchild is the definitional section of the Adoption Code. M.C.L.A. 710.22. This statute defines stepparent, the corollary of stepchild, as "a person who adopts a child [one] of whose parents is the adopting parent's spouse." M.C.L.A. 710.22(*l*). Hence, this statute envisions a stepchild relationship to require an adoption.

■ The Fifth Circuit, in *Schweiker,* relied upon a prior Social Security ruling, as well as deference to Congress, in resolving ambiguities in the Social Security Act. In the present case, the Secretary also had before her regulations, which were promulgated pursuant to the broad authority delegated by Congress. *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 530 (6th Cir.

1981), *cert. denied,* 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). The Secretary also relied on Social Security Ruling 80–27c, which held that a stepchild relationship could be established only where the wage earner married the parent after the birth of the child. The regulation at issue was promulgated on May 16, 1983. As the *Kirk* Court observed, Congress has been aware of the regulation as issued and has taken no action to either legislatively define "stepchild" or provide that broad reference be made to the laws of the state in which the insured individual is domiciled. Accordingly, the regulation defining stepchild must be held to "fully comport with Congressional intent." *Id.*

Defendant has cited two cases which, although not binding on this Court, are consistent with *Schweiker.* The federal district courts in *Voss v. Shalala,* No. 8:cv92–00666, 1993 WL 497782 (D.Neb. Sept. 9, 1993) and *Bruno for Sierra v. Secretary of HHS,* No. 88–0722 (PG), 1991 WL 325553 (D.Puerto Rico Oct. 22, 1991) both concluded that adulterine children are not stepchildren for purposes of social security benefits.

*Does the Definition of Stepchild Violate the Fifth Amendment?*

■ Plaintiffs assert that 20 C.F.R. § 404.357 violates the Equal Protection Clause of the Fourteenth Amendment, because it defines stepchild on the basis of whether the child is born out of the marital relationship and therefore is based upon an invidious and impermissible classification—the illegitimacy of the child. Because it is the action of the federal, and not a state, government which is implicated in this case, the Due Process Clause of the Fifth Amendment, which comprehends the principle of equal protection is at issue. *Mathews v. Lucas,* 427 U.S. 495, 502, 96 S.Ct. 2755, 2760, 49 L.Ed.2d 651 (1976). Even assuming that § 404.357 classifies stepchildren on the basis of legitimacy, I note that the Sixth Circuit has held that the Social Security Act's presumptive dependency provisions, based upon distinguishing between illegitimate children and other classes of children, have been held constitutional in the Sixth Circuit. *Young v. Secretary of Health and Human Services,* 787 F.2d 1064, 1070 (6th Cir.), *cert. denied*

*sub nom, Young v. Bowen,* 479 U.S. 990, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986).

■ Plaintiffs urge this Court to apply an intermediate level of scrutiny in order to determine whether the Secretary's definition of stepchild in § 404.357 is constitutional. Noting that discrimination between individuals on the basis of legitimacy does not command extraordinary protection from the majoritarian political process, the Supreme Court consistently has held that statutory classifications based on legitimacy must be substantially related to an important governmental interest. *Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 1914, 100 L.Ed.2d 465 (1988); *Mathews v. Lucas,* 427 U.S. at 506, 96 S.Ct. at 2762–63. Plaintiffs assert that because defendant failed to argue the constitutionality of § 404.357 on this intermediate level of scrutiny, but instead argued on the rational basis standard of review, defendant has failed to carry her burden on her motion and plaintiffs therefore should prevail. My review of defendant's brief supporting her Motion for Summary Judgment reveals that her use of "rational" and "reasonable" language comes directly from the Supreme Court's decision in *Lucas,* which provides the relevant analysis for determining the issue presented in this case. My reading of plaintiffs' briefs reveals that not only have they failed to address the analysis required by the *Lucas* decision, but plaintiffs have failed to even cite to or refer to the Supreme Court decision in *Lucas.*

■ It is well established that the primary purpose of the contested provision of the Social Security Act is to provide support for the dependents of a disabled wage earner. *Mathews v. Lucas,* 427 U.S. at 507, 96 S.Ct. at 2763; *Jimenez v. Weinberger,* 417 U.S. 628, 634, 94 S.Ct. 2496, 2500, 41 L.Ed.2d 363 (1974). The Supreme Court has recognized the "unprecedented dimension" involved in the administration of the social security system. *Califano v. Boles,* 443 U.S. 282, 283–84, 99 S.Ct. 2767, 2768, 61 L.Ed.2d 541 (1979). In order to efficiently process and resolve claims for social security benefits, Congress has developed categories of claimants who, with the proper showing, are presumed to be dependent on a disabled

wage earner. *Califano v. Boles,* 443 U.S. at 284, 99 S.Ct. at 2769–70. Such classifications are not *per se* unconstitutional. *Mathews v. Lucas,* 427 U.S. at 503–04, 96 S.Ct. at 2761. The relevant analysis in determining the constitutionality of the classification is whether the classification is "reasonably related to the likelihood of dependency." *Id.* at 509, 96 S.Ct. at 2764. As the *Mathews* Court explained, "[t]he essential inquiry ... is ... inevitably a dual one: What legitimate (governmental) interest does the classification promote? What fundamental personal rights might the classification endanger?" *Id.* at 504, 96 S.Ct. at 2761 (quoting *Weber v. Aetna Cas. & Sur. Co.,* 406 U.S. 164, 173, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768 (1972)).

The Supreme Court has recognized that statutory presumptions of dependency serve the legitimate governmental purpose of producing administrative convenience. *Mathews v. Lucas,* 427 U.S. at 509, 96 S.Ct. at 2764. By presuming dependency on the basis of objectively established and readily documented facts, such as legitimate birth, existence of a support order, or paternity decree, Congress and the Secretary are able to avoid the burden and expense to the government that a case-by-case analysis would entail. *Id.* See also *Califano v. Boles,* 443 U.S. at 291–92, 99 S.Ct. at 2773. Accordingly, the statutory presumption of dependency may pass constitutional muster despite the fact that the presumption approximates and does not precisely mirror the results derived from a case-by-case determination. *Mathews v. Lucas,* 427 U.S. at 509, 96 S.Ct. at 2764. The standard is whether the presumption of dependency by Congress and the Secretary is "so inconsistent or insubstantial as not to be reasonably supportive of [their] conclusions that individualized factual inquiry in order to isolate each nondependent child in a given class of cases is unwarranted as an administrative exercise." *Id.* at 516, 96 S.Ct. at 2767.

In the Social Security Act, Congress has presumed that legitimate children, including adopted children, are dependent on the wage earner. 42 U.S.C. § 416(e); *Orsini v. Sullivan,* 903 F.2d 1393, 1395 (11th Cir.1990), *cert. denied,* 498 U.S. 1024, 111 S.Ct. 672, 112 L.Ed.2d 665 (1991). Illegitimate children do not receive the same presumption. However, they can establish dependency through other provisions of the Act. An illegitimate child may establish dependency through showing entitlement to inherit personal property under the intestacy statute of the state where the insured individual is domiciled; by participation in a marriage ceremony by the insured individual and the child's natural parent which would have resulted in a valid marriage but for a legal impediment; written acknowledgement by the insured individual of paternity or maternity; by a judicial order requiring the insured individual to support the child; and by a judicial decree, entered prior to the death of the insured individual, that the insured individual was a parent of the child. 42 U.S.C. § 416(h)(2). Furthermore, if none of the aforementioned requirements are met, the child can be determined dependent on the insured individual by showing the insured individual was the child's biological parent and was either living with or contributing to the support of the child at the time of the insured's death. 42 U.S.C. § 416(h)(3)(C)(ii). Finally, an illegitimate child can establish dependency by becoming a stepchild, which only occurs if the natural parent married the insured after the birth of the child. 20 C.F.R. § 404.357. The Supreme Court in *Mathews* relied on these "alternative considerations" allowing illegitimates to establish dependency to find the statute constitutional. *Mathews v. Lucas,* 427 U.S. at 513, 96 S.Ct. at 2766. *See also Trimble v. Gordon,* 430 U.S. 762, 772, 97 S.Ct. 1459, 1466, 52 L.Ed.2d 31 (1977) (central to determination of constitutionality is finding that statute did not broadly discriminate between legitimates and illegitimates, but was carefully tuned to alternative considerations).

Plaintiffs argue that because § 404.357 distinguishes between children born prior to the marriage and subsequent to the marriage, it is based solely on the illegitimacy of the child, and therefore denies Matthew Peake equal protection of the law. However, if the disabled wage earner was Raymond Wittig, plaintiffs would have the alternative methods of proving dependency previously set forth. Moreover, if Marcie Wittig, as the wage

earner, was the child's mother as a result of an extra-marital liaison, Matthew Peake would have these alternative methods to establish dependency. In the unique factual situation presented in this case, Matthew Peake is unable to bring himself into one of the statutorily created presumptions of dependency on the wage earner. For constitutional analysis, a perfect correlation between the presumptions and the ensuing result is not required. *Mathews v. Lucas,* 427 U.S. at 509, 96 S.Ct. at 2764; *Califano v. Boles,* 443 U.S. at 290, 99 S.Ct. at 2773 (recognizing that presumptions will deny benefits in some cases); *Cotlong v. Harris,* 634 F.2d 890, 893 (5th Cir.1981) (use of Louisiana intestacy statute as presumption of dependency resulted in grant of benefits to claimant who in fact would inherit nothing from the deceased wage earner).

The resolution of this case revolves around the issue whether the presumption of dependency, denying stepchild status to a child begotten from an extra-marital affair, is insubstantial to the point that the presumption is unreasonable as an administrative exercise. The burden was on plaintiffs to demonstrate the insubstantiality of that relationship. *Mathews·v. Lucas,* 427 U.S. at 510, 96 S.Ct. at 2764. Plaintiffs made no efforts to do so, arguing instead the unfairness of the operation of the presumption in this particular case. Even if plaintiffs had argued that § 404.357 was not substantially related to a presumption of dependency, I would conclude that the distinction in the definition of stepchild between those born prior to the marriage between the wage earner and her spouse and those conceived and born outside of and subsequent to the establishment of this marital relationship does not bear an insubstantial relationship to the dependency of that child upon the wage earner. First, as the Secretary has noted, it is generally held that the stepparent of an illegitimate child has no obligation to support that child born outside of that marital relationship. *See e.g.,* Patricia Jean Lamkin, Annotation, *Validity, Construction, and Application of Statute Imposing Upon Stepparent Obligation To Support Child,* 75 A.L.R.3d 1129 (1977); Annotation, *Liability of Mother's Husband, Not the Father of Her Illegitimate Child, for Its Sup-*

port, 90 A.L.R.2d 583 (1963); 59 Am.Jur.2d *Parent & Child* § 78 (1987). There is no broad based requirement that a spouse of the father or mother of a child born outside of the marital relationship, or even a stepparent for that matter, would be compelled to support that illegitimate child. There is a substantial relationship between this fact and the presumption that such an illegitimate child would not be a dependent for the purposes of the Social Security Act.

Secondly, the Secretary and Congress could rationally and reasonably conclude that unlike the facts in this case, when a child is conceived and born as a result of an extra-marital relationship, the non-adulterous spouse would not willingly accept the child as a member of the family unit and stand *in loco parentis.* Even though this is what Marcie Wittig claims she has done in this case, her actions, as noble as they may be, are not so commonplace that the presumption against dependency is unreasonable.

### *CONCLUSION*

For the reasons stated, 20 C.F.R. § 404.-357, which excludes from the definition of stepchildren those children born out of wedlock subsequent to the marriage between the wage earner and the parent of the child, is substantially related to a legitimate governmental interest. Thus, the regulation does not violate the Fifth Amendment to the United States Constitution. Accordingly, defendant's Motion for Summary Judgment shall be GRANTED, and plaintiffs' Motion shall be DENIED. An Order consistent with this Opinion will be entered.

### *JUDGMENT*

In accordance with the Opinion entered this date,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment (docket #8) filed April 19, 1993 is **DENIED;**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (docket #9) filed April 19, 1993 is **GRANTED;**

**IT IS FURTHER ORDERED** that the Secretary's decision is **AFFIRMED** and plaintiffs' case is **DISMISSED.**