# STATE OF MICHIGAN

# COURT OF APPEALS

---

MICHELLE LAKE,

        Plaintiff-Appellee,

v

KERRI PUTNAM, also known as KERRI
SKIDMORE,

        Defendant-Appellant.

FOR PUBLICATION
July 5, 2016

No. 330955
Washtenaw Circuit Court
Family Division
LC No. 15-001325-DC

---

Before: METER, P.J., and SHAPIRO and O'BRIEN, JJ.

SHAPIRO, J. (*concurring*)

I agree with my colleagues that the trial court's ruling should be reversed and the motion for parenting time dismissed. I write separately to point out that the facts as alleged by plaintiff do not fully test the scope of *Obergefell's*[1] application to Michigan's equitable-parent doctrine and that under different facts a different result may be required.

While the parties disagree as to details, it is undisputed that they lived together for about a decade as a same-sex couple, that about five years into the relationship defendant bore a child by artificial insemination, that for several years the parties each acted as a parent to the child, and that they were both viewed as parents by the child. It is also undisputed that several years later, around September 2014, defendant ended the relationship, moved out with the child, and entered into a new relationship with a different woman. Defendant initially allowed plaintiff visitation with the child, but eventually she refused to do so. In June 2015, plaintiff filed this action seeking parenting time.

MCL 722.22(i) and (k) respectively define the terms "parent" and "third person" for purposes of the Child Custody Act, MCL 722.21 *et seq*. Under these definitions, plaintiff is a "third person," not a "parent," and so she is not provided any parental rights by statute. Accordingly, the only way for her to be entitled to relief is through the application of the equitable-parent doctrine, which we defined in *Atkinson v Atkinson*, 160 Mich App 601; 408 NW2d 516 (1987). The *Atkinson* Court held that under the equitable-parent doctrine:

---

[1] *Obergefell v Hodges*, ___ US ___; 135 S Ct 2584; 192 L Ed 2d 609 (2015).

a husband who is not the biological father of a child born or conceived during the marriage may be considered the natural father of that child where (1) the husband and the child mutually acknowledge a relationship as father and child, or the mother of the child has cooperated in the development of such a relationship over a period of time prior to the filing of the complaint for divorce, (2) the husband desires to have the rights afforded to a parent, and (3) the husband is willing to take on the responsibility of paying child support. [*Id*. at 608-609.]

Although the husband in *Atkinson* was not the child's biological father, he and the child's mother were married at the time the child was born or conceived. *Id*. at 604-605, 608. Subsequently, in *Van v Zahorik*, 460 Mich 320, 330; 597 NW2d 15 (1999), our Supreme Court considered whether to expand this doctrine outside the context of marriage. The parties in *Van* had been living together as an opposite-sex unmarried couple for five years and continued their relationship for several years after they stopped living together; during that time the defendant gave birth to two children. *Id*. at 323. After the parties ended their relationship, it was determined that the plaintiff was not in fact the biological father of the children. *Id*. at 324. He brought an action seeking parental rights as an equitable parent. *Id*. By a 4-3 vote, our Supreme Court concluded that the equitable-parent doctrine could be applied only to parties that had been married when the child was born or conceived. *Id*. at 330, 337.

Accordingly, as the parties in the instant case were never married it would appear that *Van* forecloses plaintiff's claim of parental rights under the equitable-parent doctrine. Plaintiff makes two arguments in response. First, she argues that equitable parental rights should be viewed as arising from the best interests of the child and not from the relationship status of the parties. Thus, if it is in the best interests of the child to establish parental rights in a child's long-term de facto parent, equity requires that we do so regardless of the precise nature of that person's relationship with the biological parent. This argument was, however, considered and rejected in *Van*, where it was the basis of Justice BRICKLEY'S dissent. Justice BRICKLEY wrote:

the issue in this case is not, or at least should not be, sexual relationships or the marital status of the parties. Those factors should be considered, if at all, during a best interests hearing conducted by the circuit court pursuant to MCL 722.23; MSA 25.312(3). Rather, this Court's focus should be on the innocent victims in this case, and many others like them: the children of dissolving nonmarital relationships. The issue is the best interests of these children and the role of the court in protecting them. [*Van* at 338-339 (BRICKLEY, J. dissenting).]

While Justice BRICKLEY'S view has merit, it was not the view of the majority of the *Van* Court and we are bound by the *Van* decision until such time as it is modified by the Supreme Court or the Legislature. Accordingly, I conclude that we must reject plaintiff's request to expand the equitable-parent doctrine beyond marriage based on the best interests of the child rather than the relationship of the parties.

Plaintiff's second argument turns on the fact that the parties were a same-sex couple, and so they were subject to the near-universal ban on same-sex marriage that existed prior to the 2015 decision of the United States Supreme Court in *Obergefell v Hodges*, ___ US ___; 135 S Ct 2584; 192 L Ed 2d 609 (2015). Plaintiff correctly points out that because the parties are of the

same sex, they were barred from marrying in Michigan and in Florida, which were their states of residence during their relationship. It is clear that plaintiff, as a member of a same-sex couple, did not have the opportunity afforded to men in heterosexual couples to marry their partner if she became pregnant. And, given the decision in *Obergefell*, we now know that denial of that opportunity to marry was an unconstitutional deprivation of equal protection under law. *Id*. at 2604-2605.

In *Stankevich v Milliron (On Remand)*, 313 Mich App 233, 240, 242; ___ NW2d ___ (2015), we concluded that where a same-sex couple married in a jurisdiction recognizing the validity of a same-sex marriage, the plaintiff had standing to seek relief under the equitable-parent doctrine. I would not limit our application of *Obergefell* to cases where the parties actually married in another jurisdiction. The fact that marriage was available in some other jurisdiction did not remove the unconstitutional burden faced by same-sex couples residing in a state that barred same-sex marriage within its borders. The impediment was defined by state law, and the existence of that law to those who lived under it should not now be treated as constitutionally insignificant because other states treated the issue differently.

Accordingly, plaintiff is correct that *Obergefell* demands extension of the equitable-parent doctrine. My colleagues are rightfully concerned about retroactively imposing marriage on a same-sex couple simply because one party now desires that we do so. However, that concern is fully addressed by a factual inquiry into the facts as they existed at the time the child was born or conceived. The question is whether the parties would have married before the child's birth or conception but did not because of the unconstitutional laws preventing them from doing so. If they would have married at that time, then the fact that one or both would not marry today should not retroactively impose a denial of parental rights that but for the unconstitutional bar on same-sex marriage would have been established.

Oregon's Court of Appeals recently addressed this question in *In re Madrone*, 271 Or App 116; 350 P3d 495 (2015), and its analysis offers worthwhile guidance. The Oregon Court aptly described the problem: "the distinction between married and unmarried heterosexual couples is that the married couples have chosen to be married while the unmarried couples have chosen not to be." *Id*. at 128. In contrast, a same-sex couple living in a jurisdiction that did not allow or recognize the validity of same-sex marriages was unable to make a choice as to whether they would be a married or unmarried couple. The deprivation of that choice was a violation of their equal protection rights. *Obergefell*, ___ US ___; 135 S Ct at 2604-2605. The *Madrone* Court discussed the same concerns that have arisen in this case:

> Extending the statute simply on the basis of intent to be a parent would comport with one purpose of the legislation—protecting the support and inheritance rights of children conceived by artificial insemination—but it would not be consistent with the overall statutory scheme—specifically, the legislature's decision to make the statute apply only to children of married couples. If an unmarried opposite-sex couple conceives a child by artificial insemination using sperm from a donor, the statute does not apply, even if the couple, in the words that the trial court used to describe petitioner and respondent, "lived together as a couple, intended to remain together, and intended to have a child and to co-parent the child." Accordingly, it would be inappropriate for courts to extend the statute

to same-sex couples solely on the basis of one or both of the parties' intent to have the nonbiological party assume a parental role. [*In re Madrone*, 271 Or App at 127-128.]

Ultimately, the *Madrone* court concluded that the determination of whether to extend the statute to same-sex couples that would have chosen to marry must be made on a case-by-case basis and suggested several factors that may be relevant:

> Whether a particular couple would have chosen to be married, at a particular point in time, is a question of fact. In some cases, the answer to that question will be obvious and not in dispute. . . . In other cases, the answer will be less clear. A number of factors may be relevant to the fact finder's determination. A couple's decision to take advantage of other options giving legal recognition to their relationship—such as entering into a registered domestic partnership or marriage when those choices become available—may be particularly significant. Other factors include whether the parties held each other out as spouses; considered themselves to be spouses (legal purposes aside); had children during the relationship and shared childrearing responsibilities; held a commitment ceremony or otherwise exchanged vows of commitment; exchanged rings; shared a last name; commingled their assets and finances; made significant financial decisions together; sought to adopt any children either of them may have had before the relationship began; or attempted unsuccessfully to get married. We hasten to emphasize that the above list is not exhaustive. Nor is any particular factor dispositive (aside from unsuccessfully attempting to get married before same-sex marriages were legally recognized . . .), given that couples who choose not to marry still may do many of those things. Instead, we view the factors as tending to support, but not compelling, an inference that a same-sex couple would have married had that choice been available. [*Id*. at 128-129.]

I would adopt this approach and hold that a party is entitled to seek equitable parental rights arising out of a same-sex non-marital relationship where the evidence shows by a preponderance of the evidence that but for the ban on same-sex marriage in the parties' state of residency, they would have married prior to the birth of the child. Given that this is a factual question, its resolution requires consideration of the evidence submitted by the parties, and I agree that, as a general rule, it would require an evidentiary hearing. However, like most evidentiary questions, it may be resolved in one party's favor as a matter of law where the other party fails to provide sufficient evidence to create a question of material fact. That is the situation here. While the affidavits presented to the trial court on behalf of plaintiff state that the parties were in a committed relationship and that while in that relationship they raised the child together as co-parents, none of the affidavits, including plaintiff's, state or allow for an inference that but for the then-existing unconstitutional barriers to same-sex marriage the parties would have married. Had such evidence been presented, I would conclude that we should remand the case for the trial court to conduct an evidentiary hearing on the question and if the trial court answered it affirmatively, for a hearing to determine custody and parenting time in accordance with the best interests of the child. In the absence of such evidence, however, remand proceedings are not required.

In her brief, plaintiff asserts that *Obergefell* found the denial of the right to marry to same-sex couples to be irrational and unjust. She goes on to assert that "[i]t would be equally irrational and unjust for Michigan to deny [the child] the benefits and protections of the equitable-parent doctrine because his parents were unmarried, given that the only reason they were unmarried is that they were unconstitutionally denied the right to marry during their relationship." I fully agree with this view and believe it is consistent with *Obergefell* and the constitutional principles on which it rests. However, on the facts of this case, I do not believe that plaintiff can establish that but for the unconstitutional ban on same-sex marriage that she and defendant would have married prior to the birth or conception of the child. In another case, the facts may very well be sufficient to demonstrate that the parties would have married if not for the ban on same-sex marriage and in such a case I believe the courts would be required to recognize the parental rights of the non-biological parent and determine custody and parenting time consistent with the best interests of the child.

/s/ Douglas B. Shapiro