ZUZIAK v ZUZIAK

Docket No. 102470, 102471. Submitted March 2, 1988, at Lansing.
   Decided July 5, 1988.

   In March, 1976, the Saginaw Circuit Court granted Charlene
   Zuziak a judgment of divorce from Robert L. Zuziak. Plaintiff
   wife was granted custody of the couple's three-year-old child.
   Mother and child subsequently moved to Texas. In May, 1982,
   the parties agreed that the child should live with Robert and
   his new wife, Mary Jo Zuziak. In September, 1983, the circuit
   court granted Robert's petition for change of custody and
   ordered that Robert have custody of the child. In June, 1986,
   Robert and Mary Jo Zuziak separated. The child, now thirteen,
   opted to live with Mary Jo. In September, 1986, Mary Jo
   Zuziak filed for a divorce from Robert and filed an action for
   custody of the child. The custody petition was subsequently
   dismissed. In October, 1986, Charlene Zuziak petitioned the
   Saginaw Circuit Court, seeking that the court amend the
   divorce judgment and grant her custody of the child. Mary Jo
   intervened and was granted interim custody of the child. In
   April, 1987, Mary Jo sought permanent custody of the child. In
   August, 1987, the trial court, Robert S. Gilbert, J., following
   hearings on the matter, amended the divorce judgment and
   ordered that custody of the child be with the mother of the
   child, Charlene Zuziak. Mary Jo Zuziak appealed. Robert Zuz-
   iak appealed separately. The appeals were consolidated.

   The Court of Appeals *held:*

   1. Orders of the circuit court in child custody matters are to
   be affirmed unless the trial court made findings of fact against
   the great weight of the evidence or committed a palpable abuse
   of discretion or made a clear legal error on a major issue.

   2. The trial court's finding that the child did not have an
   established custodial environment with Mary Jo Zuziak was
   against the great weight of the evidence. The evidence clearly

REFERENCES
Am Jur 2d, Appeal and Error § 136.
Am Jur 2d, Divorce and Separation §§ 963 *et seq.*
Award of custody of child where contest is between natural parent
   and stepparent.

showed that the child over an appreciable period of time looked to Mary Jo Zuziak for guidance, discipline, the necessities of life and parental comfort and that this was a stable and permanent relationship. Accordingly, the trial court erred in failing to apply the statutory presumption which arises where there is an established custodial relationship, i.e., that it is in the best interests of the child to continue that established custodial relationship.

3. Whether using the *clear and convincing* evidence standard of proof or the preponderance of the evidence standard of proof, the record establishes that the best interests of the child would be better served by Mary Jo Zuziak's retaining custody.

4. Since the statutory presumption that the best interests of the child are served by awarding custody of the child to the parent rather than a third party and the statutory presumption that the best interests of the child are served by continuing an established custodial environment are in conflict, the burden of proof evolves into a preponderance of the evidence and the burden of persuasion rests with the parent challenging the established custodial environment.

Reversed.

1. APPEAL — CHILD CUSTODY.

Child custody cases are considered de novo by the Court of Appeals, but review is limited by the section of the Child Custody Act which requires all orders and judgments of the circuit court to be affirmed on appeal unless the court made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue (MCL 722.28; MSA 25.312[8]).

2. PARENT AND CHILD — CHILD CUSTODY — PRESUMPTIONS — CHILD CUSTODY ACT.

The burden of proof in a child custody case where both the parental presumption and the established custodial environment presumption of the Child Custody Act are applicable and preponderate in opposite directions evolves into a preponderance of the evidence; in such a case the burden of persuasion rests with the parent challenging the established custodial environment in the home of a third party.

*Gust & Orr* (by *James F. Gust*), for plaintiff.

*Thomas D. Burkhart,* for Mary Jo Zuziak.

*Thomas E. Bock,* for Robert L. Zuziak.

Before: SAWYER, P.J., and M. J. KELLY and J. J.
RASHID,* JJ.

M. J. KELLY, J. This consolidated appeal presents
a novel, if not unique, problem involving the cus-
tody of a minor child. In the March 29, 1976,
judgment of divorce, plaintiff wife, Charlene Even-
house, was given custody of the minor child of that
marriage, Nicole, born March 31, 1973. Subse-
quently, plaintiff moved to Houston, Texas with
the child. This was done without permission of the
court. Consequently on January 24, 1979, the judg-
ment of divorce was modified, and this modifica-
tion reflected for the most part the changes in
visitation by the child with defendant father, Rob-
ert Zuziak, necessitated because of plaintiff's hav-
ing moved out of state. Thereafter, by agreement
of the parties, the child moved to Michigan to live
with defendant and intervening defendant in May
of 1982. Defendant had married intervening defen-
dant, Mary Jo Zuziak, on March 18, 1978, and
Nicole in 1982 lived in their home when she
returned to Michigan. On May 5, 1983, defendant
petitioned the court for a change of custody and
this petition was granted on September 13, 1983,
giving defendant the responsibility for the care,
custody, control and education of the child until
she reached the age of eighteen or graduated from
high school, whichever was later.

However, Robert and Mary Jo Zuziak separated
on June 20, 1986, and the child, then thirteen,
opted to live with Mary Jo. No one notified plain-
tiff of the separation or that her daughter was
living with Mary Jo, the stepmother. During Ni-
cole's visit with plaintiff in the summer of 1986,
Nicole did not inform plaintiff of the separation. In
September, 1986, Mary Jo petitioned for a divorce

---

* Circuit judge, sitting on the Court of Appeals by assignment.

from Robert and filed an action for custody of the child. The petition for custody was later dismissed.

Upon learning of the separation of defendant and intervening defendant and learning that the child was living only with intervening defendant, plaintiff petitioned the court on October 14, 1986, to amend the judgment of divorce to change the custody of the child from defendant father to plaintiff mother. Mary Jo Zuziak moved to intervene in this matter. Intervening defendant had been granted interim custody of the child on September 22, 1986; on April 3, 1987, she requested that custody of the child be awarded to her.

On August 3, 1987, following hearings on this matter, the judgment of divorce was amended to reflect that plaintiff was granted custody of the child. Intervening defendant and defendant separately moved for a new trial and reconsideration. These motions were denied. Intervening defendant appealed. Defendant also appealed. Defendant's and intervening defendant's appeals were consolidated, and they have joined together in filing one brief in this matter.

Appellants' first argument is that the trial court's finding that there was no established custodial environment was against the great weight of the evidence and therefore the trial court erred in failing to apply § 7 of the Child Custody Act, MCL 722.27; MSA 25.312(7).

Our review of child custody cases is de novo. *Sedlar v Sedlar*, 165 Mich App 71, 74; 419 NW2d 18 (1987). However, this review is tempered by MCL 722.28; MSA 25.312(8), which provides:

> To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made

findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.

Appellants here argue that the finding of the trial court, that there did not exist an established custodial environment, was against the great weight of the evidence and led to a clear legal error. The first step in considering a change of custody petition is to determine whether an established custodial environment exists so that a determination can be made on the correct burden of proof. *Sedlar, supra* at 75. If there is no established custodial environment, the burden of proof for a change of custody is merely a preponderance of the evidence; however, the Child Custody Act requires that, where there is an established custodial environment, no change in custody should take place unless clear and convincing evidence is presented that such a change is in the best interests of the child. MCL 722.27(1)(c); MSA 25.312(7)(1)(c). Section 7(1)(c) of the Child Custody Act also provides:

> The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.

On this issue the trial court found that there was "not a stable environment for a considerable length of time . . . at least since June of 1986. There's been disruptions in the way the child has been changed from one family arrangement to another." The trial court then concluded that on

the facts of this case the presumption of § 7 did not apply. We disagree with this conclusion and determine that this finding was against the great weight of the evidence.

It was undisputed during the hearings on plaintiff's petition that intervening defendant, Mary Jo Zuziak, was primarily responsible for providing parental care, discipline, love, guidance and attention to Nicole from the time the child returned to Michigan in 1982. This was necessitated by the father's working the second shift, his extensive involvement with union and community activities, and the natural mother's residence in Texas. Mary Jo was the parent available to attend to the child's needs, albeit a stepparent.

Mary Jo's influence on the child continued after Mary Jo and Robert separated. Although Mary Jo moved out of the marital home, Nicole continued to live with Mary Jo in an apartment in the same area, close to the child's friends and school. The child's participation in extracurricular school activities continued, as did her attendance at the same church. While in Mary Jo's custody, Nicole made regular trips to plaintiff's extended family (that lived in the area) and visited with plaintiff in Texas. Plaintiff agreed that Nicole was well cared for and had been doing well in school.

Mary Jo provided financially for the "extras" that the child required. This included normal living expenses, extracurricular school expenses and medical care, especially necessary dental work.

After the separation, Nicole continued to look to Mary Jo for guidance, Mary Jo was personally involved in Nicole's day to day care and extracurricular activities, and the child responded well to Mary Jo's requests as to order and discipline. During the period of separation the child continued to maintain above average school grades.

On these facts we find that the relationship between parent and child was stable and permanent and that the trial court's findings were against the great weight of the evidence. Consequently, we conclude that the trial court made a clear legal error in not applying the presumption of § 7.

Appellants also challenge the findings of the trial court with regard to the best interests of the child, pursuant to MCL 722.23; MSA 25.312(3). In reaching a determination of the best interests of the child the eleven factors in § 3 of the Child Custody Act must be considered. Section 3 provides:

"Best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and continuation of the educating and raising of the child in its religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.

(k) Any other factor considered by the court to be relevant to a particular child custody dispute.

Because the trial court was in the best position to evaluate the witnesses and draw conclusions based on their testimony, for the most part we agree with the original determination of the trial court on the several issues involved and defer to its conclusions.

Like the trial court, we agree that regarding factors (a), (b) and (c), the parties are more or less equal. However, we differ with the trial court in its finding on factor (d). Based on the facts that support our finding that there was an established custodial environment, we find factor (d) weighed in favor of Mary Jo. Our review of the record reveals that there is a stable satisfactory home environment for Nicole with Mary Jo and we find that this is a positive nourishing environment. We conclude that the trial court's finding on this factor was against the great weight of the evidence. Likewise, we conclude that the trial court's finding in factor (e) was against the great weight of the evidence. The basis for the trial court's conclusion that Mary Jo's home was not a permanent family unit appears to be the fact that she and defendant were separated and that she had filed for divorce.[1]

However, the facts presented showed that Mary

[1] We note that if separation and divorce are criteria for reaching a negative conclusion on this factor it would appear that in most child custody cases this factor would be of little practical use.

Jo had provided a home for Nicole for over one year after Mary Jo's separation from defendant. Simply because one party in a custody suit is single, should not preclude a finding that they have the ability to provide a permanent custodial home and family unit. However, it also appears from our review of the record that plaintiff was equally able to provide a permanent home and family unit. For these reasons we conclude that both parties are equal on this issue.

We agree with the findings of the trial court that the parties are even with regard to factors (f) and (g). We also agree with the trial court that with respect to factors (h) and (i) Mary Jo has an advantage over plaintiff. We also defer to the findings of the trial court on the remaining factors, finding that factor (j) favored plaintiff and that with respect to factor (k), plaintiff had previously exhibited a willingness to defer to the best interests of the child in previously voluntarily relinquishing custody to defendant in 1982.

Based on our findings on the best interests of the child factors of § 3 of the Child Custody Act, we conclude that, under either the clear and convincing standard or the preponderance of the evidence standard, Nicole's best interests would better be served by Mary Jo's retaining custody. Our determination that this conclusion is justified under either standard becomes important with regard to our consideration of the issues raised pertaining to § 5 of the Child Custody Act, MCL 722.25; MSA 25.312(5).

Because of our finding that there was an established custodial environment, necessitating application of the presumption contained in § 7 of the Child Custody Act, we also agree with appellants that the trial court committed a clear legal error on a major issue in holding that the only applica-

ble presumption was that contained in § 5 of the Child Custody Act. On this basis the trial court shifted the burden to intervening defendant to show by clear and convincing evidence that the best interest of the child was for custody to remain unchanged.

Section 5 of the act provides:

> When the dispute is between the parents, between agencies or between third persons the best interests of the child shall control. When the dispute is between the parent or parents and an agency or a third person, it is presumed that the best interests of the child are served by awarding custody to the parent or parents, unless the contrary is established by clear and convincing evidence.

"In any child custody dispute, including those between natural parent and a third party, the overriding concern is for the best interests of the child." *Deel v Deel,* 113 Mich App 556, 559; 317 NW2d 685 (1982).

In *Glover v McRipley,* 159 Mich App 130; 406 NW2d 246 (1987), this Court, faced with both the presumption in § 5 and the presumption in § 7 of the Child Custody Act, had to determine the best interests of the child. In *Glover,* the natural father was seeking custody although the maternal grandparents had provided an established custodial environment for the child. The then nine-year-old child had resided with the grandparents since birth. Faced with these conflicting presumptions this Court stated:

> As we concluded in *Deel,* the fact that the two presumptions are opposed in certain cases does not mean that they cancel each other out. On the other hand, it cannot mean that the burden of

proof in each presumption must continue to be applied literally. Such a conclusion would only lead trial courts into a logical paradox. We therefore conclude that, in instances in which both the parental presumption of § 5 and the established custodial environment presumption of § 7 are applicable, the burden of proof evolves into a preponderance of the evidence. A remaining question is which party bears the burden of proof.

In *Deel,* as quoted *supra,* we noted that the statutory language and our prior decisions suggest that the burden of proof is on the third party to rebut the parental presumption. However, *Deel* also notes that proof of the existence of an established custodial environment could effectively rebut the parental presumption. We think that it is obvious that each party bears the burden of proof vis-à-vis his own presumption. The key issue is who bears the burden of persuasion in these cases.

We hold that the burden of persuasion rests with the parent challenging an established custodial environment in the home of a third party. In doing so, we are not unmindful of the special care with which the Legislature articulated the parental presumption, nor are we unmindful of the fact that the established custodial environment presumption is purely procedural. Nevertheless, it is clear that the best interest of the child is the primary goal of the act. MCL 722.27(1); MSA 25.312[7](1), *Deel, supra,* p 559, and cases cited therein. We believe that placing the burden of persuasion on the parent challenging an established custodial environment is better calculated to elicit the quality of testimony and evidence required by a trial court in its determination of the best interest of the child. We also believe that, as indicated by the expert testimony in this and other cases, the importance of residence with a biological parent pales beside the importance of stability and continuity in the life of a child. [159 Mich App 146-147.]

Based on our determination that, under either

the preponderance of the evidence standard or the clear and convincing evidence standard, the best interest of Nicole would be served in maintaining custody with Mary Jo, we conclude that plaintiff has failed to carry her burden of persuasion. On this basis we hold that custody should be returned to Mary Jo.

Appellants have also claimed that, based on the theory of equitable parent, enunciated in this Court's opinion in *Atkinson v Atkinson,* 160 Mich App 601; 408 NW2d 516 (1987), lv den 429 Mich 884 (1987), the trial court erred in applying the presumption in § 5 of the Child Custody Act since Mary Jo is an equitable parent. However, we disagree with the appellants' contention that the rule in *Atkinson* is applicable here. This case is clearly distinguishable. The unique status of the husband in *Atkinson,* who believed from the time of the child's birth that he was the natural father and only upon divorce discovered otherwise, is not analogous to the facts here. Therefore, we find appellants' reliance on *Atkinson* misplaced, and we decline to extend the equitable parent doctrine to the facts presented here.

We also reject appellants' argument that there is a dispute between the natural parents. Appellants argue that Robert, the natural father, wishes Mary Jo to have custody and therefore this is a dispute between natural parents and the presumption of § 5 of the Child Custody Act is inapplicable. The trial court found that defendant father had not made a plan for the child and was not seeking custody. This finding was not against the great weight of the evidence, and we conclude that it was appropriate for the trial court to consider the implications of the presumption contained in § 5 of the act.

However, for the reasons previously stated we reverse.

Reversed.