SOUMIS v SOUMIS

Docket No. 184498. Submitted May 13, 1996, at Marquette. Decided July 26, 1996, at 9:35 A.M.

Raphael Soumis brought an action in the Houghton Circuit Court seeking a divorce from Joyce M. Soumis, who bore two children, Delina and Jessie Soumis, during the marriage. After trial commenced, the defendant moved to amend her pleadings to allege that the plaintiff was not the biological father of Jessie and moved for a continuance of trial to allow for human leukocyte antigen analysis (HLA) to discern paternity. The court, Garfield W. Hood, J., granted the motion for amendment of the pleadings, but denied the motion for a continuance. At the conclusion of the trial, the court entered a judgment of divorce and awarded the parties joint legal custody of both children and joint physical custody of Jessie. Physical custody of Delina was awarded to the plaintiff. The defendant appealed.

The Court of Appeals *held*:

1. The trial court did not abuse its discretion in denying the motion for a continuance. A motion for an adjournment based on the unavailability of evidence must be made as soon as possible after ascertaining the facts. MCR 2.503(C)(1). Here, the defendant testified that she believed that the plaintiff was not Jessie's biological father from the time of Jessie's birth and the defendant offered no plausible explanation for not raising the issue of paternity sooner. Additionally, the motion was not made for good cause inasmuch as there was sufficient evidence indicating that the plaintiff was the biological father.

2. The trial court did not err in applying the "equitable parent" doctrine. The requirements set by *Atkinson v Atkinson*, 160 Mich App 601 (1987), for a finding of equitable parenthood were satisfied in this case.

3. The trial court did not err in refusing to apply the presumption in favor of natural parents, as provided in MCL 722.25; MSA 25.312(5). That presumption is applied only in cases involving a custody dispute between the parent or parents and an agency of a third person. In a custody dispute between the parents, as is the case here, the best interests of the child, as provided in MCL

722.23; MSA 25.312(3), control. The trial court correctly determined that it was in the best interests of Jessie that the plaintiff be considered her father.

4. The trial court did not err in refusing to allow HLA tests. Such testing would not have been in Jessie's best interests, would not have been relevant, and would have been more prejudicial than probative.

5. The trial court did not contravene *Serafin v Serafin*, 401 Mich 629 (1977), with respect to the issue of the parties' lack of access to each other.

Affirmed.

MARKMAN, J., concurring, stated that the majority's references to the fact that the alleged biological father of Jessie is dead should not be construed as giving rise to an inference that the result would have been different had that person been alive. The significant proposition in the majority's opinion is that an equitable parent stands on equal footing with any other natural or adoptive parent.

1. DIVORCE — CHILD CUSTODY — APPEAL.

An appellate court must affirm orders of child custody unless the trial court's findings of fact were against the great weight of the evidence, the discretionary rulings constituted an abuse of discretion, or the legal rulings constituted clear legal error (MCL 722.28; MSA 25.312[8]).

2. PARENT AND CHILD — EQUITABLE PARENTS.

An individual who has been found to be an equitable parent stands on equal footing with any other natural or adoptive parent.

3. DIVORCE — CHILD CUSTODY.

The best interests of a child determine in whose custody the child is to be placed where custody is disputed in a divorce proceeding (MCL 722.23, 722.25; MSA 25.312[3], 25.312[5]).

*Vairo, Mechlin, Tomasi, Johnson & Manchester* (by *Jeryl A. Manchester*), for the plaintiff.

*Hunter H. Watson*, for the defendant.

Before: HOOD, P.J., and MARKMAN and A. T. DAVIS, JR.,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Defendant appeals as of right the circuit court's judgment of divorce entered on January 5, 1995. The court awarded the parties joint legal custody of their two minor children, Delina Soumis, born on February 17, 1981, and Jessie Soumis, born on December 14, 1988. It awarded plaintiff full physical custody of Delina and ordered the parties to share physical custody of Jessie, with the child to reside with each party for alternating six-month periods. We affirm.

The parties were married on November 4, 1978. Plaintiff filed for divorce on July 28, 1993. On March 14, 1994, following 2 ½ days of testimony, the court awarded temporary custody of the two minor children. On September 12, 1994, two days before the final hearing, defendant moved for leave to amend her pleadings and for a continuance. Defendant raised for the first time the issue of paternity with regard to Jessie. She requested that the court order plaintiff to submit blood samples for testing and that she be allowed to present evidence of a human leukocyte antigen analysis (HLA), a blood test. Following oral arguments, the court denied defendant's motion for a continuance. The court granted the motion for leave to amend because "otherwise the defendant would be precluded from presenting evidence upon which this Court might . . . reconsider its ruling as to the request for continuance to obtain the blood tests."

Defendant testified that at the time of Jessie's conception, which would have occurred sometime in January through March 1988, she and plaintiff were not having sexual relations, although they were living together as husband and wife. She was sexually involved with a man named Rodney Franklin, whom

she believed to be Jessie's father. She met Franklin in January 1988 and immediately became sexually involved with him. Their relationship ended in June, when she and plaintiff reconciled. Plaintiff, however, testified that defendant told him that she met Franklin when she began a new job in the latter part of March.

Although defendant claimed that she and plaintiff did not have sexual relations during the period when the conception occurred, she admitted that on at least two occasions she and plaintiff had sexual relations at a honeymoon suite at a local casino. She admitted that those days could have been in the early months of 1988.

Defendant claimed that she told plaintiff that he was not the father when she informed him of her pregnancy in April 1988, but that he had never believed her. Defendant also claimed that plaintiff admitted to third parties that he was not Jessie's father. Plaintiff stated that the trial motion was the first time since before Jessie's birth that the subject of his paternity had been mentioned.

Plaintiff testified that he believed Jessie to be his daughter and that she looked to him as a parent. Although defendant told him that the child might not be his, plaintiff believed Jessie to be his child on the basis of her birth date and the fact that she appeared to be a full-term baby. Plaintiff maintained that the parties ceased having sexual relations only after defendant told him of her pregnancy and relationship with Franklin.

Defendant admitted that plaintiff was the only father that Jessie knew. The man she claimed was the child's biological father had died a year or two after

Jessie was born. She claimed that she mentioned the issue of paternity because she wanted plaintiff to know that he was not Jessie's father. She realized that it could be damaging to the child to find out at this point that plaintiff was not her father.

In it's opinion, the trial court stated:

> [E]vidence was presented from which it could be found that notwithstanding the presumption that plaintiff is Jessie's biological father, he actually is her biological father. Furthermore . . . there was more than ample evidence presented to satisfy the three part test postulated in *Atkinson vs Atkinson* [160 Mich App 601; 408 NW2d 516 (1987)] and find Mr. Soumis to be the equitable parent of Jessie. Therefore, since the presentation of the additional evidence urged by defendant would not alter this Court's finding that sufficient other credible evidence exists by which plaintiff could be found to be Jessie's biological father, reopening of the proofs would be futile. Equally futile would be the requirement that the parties submit to blood tests since even if plaintiff were found not to be Jessie's natural father he is clearly her "equitable parent" as defined by the Court in *Atkinson.*

> \*     \*     \*

> [T]his Court finds it absolutely abhorrent that Mrs. Soumis, who did not raise the issue [of paternity] in any of her pleadings throughout this lengthy proceeding, and who did not raise the issue during the two and one-half day hearing on the question of temporary custody, in the midst of trial, and in both a proceeding and in documents open to the public, asserted in some detail that plaintiff was not Jessie's father while identifying another, who is now deceased and cannot speak from the grave, as her biological father. This Court can think of no way in which Jessie would be benefited by her mother's allegations and disclosures but there are many ways in which she is likely to be damaged by them. . . . This Court concludes that Mrs. Soumis'

actions, while within her right, were misguided and showed a callous disregard for Jessie's welfare.

Defendant first argues that the trial court erred in refusing to grant a continuance to allow the parties to submit to blood testing. We disagree. The ruling on a motion for a continuance is discretionary and is reviewed for an abuse of discretion. *In re Jackson,* 199 Mich App 22, 28; 501 NW2d 182 (1993).

"A motion for adjournment must be based on good cause, and a court, in its discretion, may grant an adjournment to promote the cause of justice." *Zerillo v Dyksterhouse,* 191 Mich App 228, 230; 477 NW2d 117 (1991). Additionally, MCR 2.503(C)(1) requires that a motion for adjournment based on the unavailability of evidence "must be made as soon as possible after ascertaining the facts." In the instant case, defendant testified that she had believed from the time of Jessie's birth that plaintiff was not the child's father. She offered no plausible explanation for waiting until a few days before the final hearing to raise the issue.[1]

Furthermore, plaintiff's request was not made for good cause. Contrary to plaintiff's argument, this case is distinguishable from *In re Flynn,* 130 Mich App 740; 344 NW2d 352 (1983).[2] Unlike the facts in *Flynn,* the instant case does not involve two men who were each vying for paternity. Here, there was sufficient

---

[1] Defendant merely claimed that she failed to raise the issue during the March custody hearing because of a "misunderstanding of the law due to a natural reluctance to discuss it with counsel and out of fear of plaintiff's response."

[2] We note that the holding in *Flynn* was characterized as "unpersuasive" by the Supreme Court. See *Girard v Wagenmaker,* 437 Mich 231, 251-252, n 7; 470 NW2d 372 (1991).

evidence that plaintiff was the child's biological father. Moreover, the court was presented with the choice of either leaving a firmly established paternal relationship or risking the destruction of that relationship by ordering blood tests that could leave the child essentially fatherless. We therefore conclude that defendant's motion was not timely and was not made for good cause. The trial court did not abuse its discretion in denying defendant's motion.

Defendant next argues that the trial court erred in applying the equitable parent doctrine in favor of plaintiff because he knew before the child's birth that he might not be the father and there was no determination whether he is the child's biological father. We disagree. When reviewing orders of child custody, an appellate court must affirm the orders unless the findings of fact were against the great weight of the evidence, the discretionary rulings constituted an abuse of discretion, or the legal rulings constituted clear legal error. MCL 722.28; MSA 25.312(8); *Hayes v Hayes*, 209 Mich App 385, 389; 532 NW2d 190 (1995).

In this case, there was sufficient evidence that plaintiff was the child's biological father. Even if a husband knows that he may not be the father of a child born during the marriage, this Court has held that where he represents himself for many years as the father of the child, he is estopped by his conduct from denying paternity. *Atkinson*, p 610; *Johnson v Johnson*, 93 Mich App 415, 419; 286 NW2d 886 (1979). Further, contrary to defendant's contention, there is no additional factor in the *Atkinson* test requiring that the husband have no knowledge of the fact that his paternity may be in question. Rather, the *Atkinson* test analogized the doctrine of equitable parent to

that of equitable adoption. *Id.*, p 611. Clearly, in adoption cases, the adoptive parents know they are not the biological parents. Therefore, the established law is exactly the opposite of what defendant contends. Indeed, an individual who has been found to be an "equitable parent" under the *Atkinson* standards stands on equal footing with any other natural or adoptive parent.

Moreover, in most cases where a biological relationship is challenged, courts must make a determination of paternity because of the legislatively created presumption in favor of natural parents contained in MCL 722.25; MSA 25.312(5). The presumption is applied *only* in cases involving a custody dispute "between the parent or parents and an agency of a third person . . . ." *Id.* In a custody dispute between the parents, the best interests of the child shall control. *Id.*; *Heid v AAASulewski*, 209 Mich App 587, 595; 532 NW2d 205 (1995); *Lombardo v Lombardo*, 202 Mich App 151, 159; 507 NW2d 788 (1993). This standard cannot be abrogated, even in fairness to the parties. *Moser v Moser*, 130 Mich App 97, 101; 343 NW2d 246 (1983).

We find that the trial court properly determined that it was in the best interests of the child for plaintiff to be considered the child's father in the absence of blood test evidence. The alleged biological father has been deceased since shortly after the child's birth. Obviously, a deceased parent cannot provide support or guidance. Defendant admitted that plaintiff is the only father Jessie has ever known and the only father she would ever know. Defendant also had encouraged the parent-child relationship between plaintiff and

Jessie. We therefore conclude that the trial court did not err in refusing to apply the presumption in favor of natural parents to defendant.

Defendant finally claims that the court clearly erred in refusing to order HLA blood testing because it was the best evidence available of plaintiff's nonpaternity. We disagree.

Again, the overriding concern in any custody dispute is the best interests of the child as measured by the factors set forth in MCL 722.23; MSA 25.312(3). *Zuziak v Zuziak*, 169 Mich App 741, 750; 426 NW2d 761 (1988). In this case, allowing HLA evidence to be introduced cannot be in the best interests of the child, because it would only undermine her established relationship with plaintiff. Defendant admitted at trial that her only reason for introducing the evidence was so that plaintiff would know he was not Jessie's father. As the trial court stated: "To say the least, the position advanced by Mrs. Soumis at trial is not indicative of a willingness and ability on her part to encourage a close and continuing parent/child relationship between Jessie and Mr. Soumis."

Additionally, under the Michigan Rules of Evidence, only relevant evidence is admissible. MRE 401, 402. The trial court determined that plaintiff was entitled to be considered Jessie's natural parent. Therefore, the blood test evidence was irrelevant and, thus, inadmissible. Even if the HLA blood test would have been relevant to the issue of paternity, it was properly excluded because its probative value was substantially outweighed by the danger of unfair prejudice. MRE 403. Because the alleged father is deceased, HLA tests establishing him to be the biological father would have left the child fatherless and her relation-

ship with plaintiff irreparably damaged. Plaintiff is certainly a better father than one who is dead. The resulting prejudice to plaintiff's rights and harm to the child would not be outweighed by the vindication of the rights, if any, of the deceased.

Finally, defendant's reliance on *Serafin v Serafin*, 401 Mich 629; 258 NW2d 461 (1977), is misplaced. That case held only that "a husband and wife may testify concerning nonaccess to each other." *Id.*, p 634. The record clearly indicates that a substantial amount of evidence was introduced regarding the issue of access. Accordingly, the court did not contravene the holding in *Serafin.*

Affirmed.

MARKMAN, J., *(concurring)*. I concur fully in the reasoning and conclusions of the majority opinion. However, I am concerned that its several references to the fact that the alleged biological father of Jessie Soumis is dead, and that a judgment in favor of defendant "could leave the child essentially fatherless," suggest that our decision might have been different had the alleged biological father still been alive. I do not believe that such an inference should be drawn from the majority opinion or that this is its intention. Rather, what is significant in the majority opinion is its straightforward proposition that an "equitable parent" stands on "equal footing with any other natural or adoptive parent." We affirm the decision of the trail court, not because the alleged biological father happens to be dead, but rather because plaintiff is the "equitable parent." He would be just as much the "equitable parent" if the alleged biological father were still alive and prepared to assert his fatherhood at this late juncture.