# STATE OF MICHIGAN

# COURT OF APPEALS

TODD PECK,

        Plaintiff-Appellee,

v

RACHEL PATRICIA ANN PECK, also known as
RACHEL PATRICIA ANN CONLEY,

        Defendant-Appellant.

UNPUBLISHED
October 10, 2016

No. 332814
Newaygo Circuit Court
LC No. 14-052965-DM

Before: SAWYER, P.J., and MARKEY and O'BRIEN, JJ.

PER CURIAM.

Defendant, Rachel Patricia Ann Peck (also known as Rachel Patricia Ann Conley), appeals as of right the circuit court's January 22, 2016 order placing one of the parties' minor children into "Teen Challenge," a boarding school, as requested by plaintiff, Todd Peck. On appeal, defendant argues that the circuit court erred in failing to make a best-interests determination regarding the child's placement in Teen Challenge after an evidentiary hearing. Because we agree, we remand for further proceedings.[1]

---

[1] At the outset, we reject plaintiff's argument that the issues raised in this appeal are moot because he was awarded sole physical custody of the parties' minor children after the order at issue in this appeal was entered. The parties nevertheless maintain joint legal custody, and defendant continues to have significant parenting time including overnights with the children. Moreover, as illustrated below, the custody of the child at issue in this case has changed several times since the parties' divorce, and it seems likely that it will continue to change into the future. See, e.g., *Wiechmann v Weichmann*, 212 Mich App 436, 441 n 4; 538 NW2d 57 (1995). We also reject plaintiff's cursory argument that defendant's appeal is frivolous for the reason that he has failed to adequately support his position. *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015). Furthermore, as discussed below, defendant's appellate arguments have merit.

Plaintiff and defendant were married for several years and share custody over five children. Only one of those children, the parties' 16-year-old daughter, is at issue in this appeal.[2] After the parties divorced, they were awarded joint legal and physical custody, but it appears that the children primarily resided with plaintiff.[3] Several months after the divorce, however, plaintiff determined that he no longer wished to have the 16-year-old daughter live primarily with him after he apparently caught her cutting herself and maintaining a relationship with an older boy. According to defendant, plaintiff "was very upset" and dropped her off with the following explanation:

> "I am dropping [the child] off. It's going to break my heart. I don't want to do this, but she wants to live with you. I'm afraid she is going to hurt one of the boys or me. She's out of control." He said, "We need to speak to the attorneys and have something written up. I don't want to be legally responsible for her because of what I see coming."

Consequently, the child began living primarily with defendant, and plaintiff had approximately two-and-a-half hours of parenting time with her each week. Changing the child's primary residence unsurprisingly led to a variety of other changes in the child's daily life. Most pertinent to this appeal, however, is the change to the child's education.[4] The child had been homeschooled throughout her entire life, and, once she began living primarily with defendant, she began attending public school in September 2015.[5] The transition from homeschool to public school did not go as well as the parties hoped, and, according to her October 2015 progress report, the child was failing two classes, had three absences, and had two tardies. The

---

[2] The child is currently 16 years old, but she was 15 years old at the time the order appealed was entered.

[3] Plaintiff's residence was noted as the primary residence, but defendant had parenting time each weekday and on alternating weekends. As noted above, however, the record reflects that the parties' custody arrangement has changed since the order at issue in this appeal was entered.

[4] While the parties and the circuit court appeared to define the dispute as educational in nature, it is clear from the record that the parties' dispute goes well beyond the child's educational needs. For example, plaintiff devoted several minutes of the hearing to offering testimony regarding whether or not the 16-year-old child, who was 15 years old at the time of the hearing, was permitted to watch movies that included Will Ferrell such as *Talladega Nights*. Plaintiff also devoted a substantial amount of time during the hearing to offering testimony regarding whether the 16-year-old child was aware that defendant may have been having a sexual relationship "outside the bonds of wedlock."

[5] The record reflects that the child stopped cutting herself once she began residing with defendant. It also reflects that she had obtained employment as a "hostess," but it is clear that plaintiff had an issue with that employment, and the circuit court apparently found working as a hostess "very questionable," opining that, "if [she] had a daughter, [she]'d want her working at an insurance agency or real estate office or law office." It is unclear to us what, if any, impact her employment as a hostess had on her education.

-2-

record reflects that defendant met with all of her teachers and made a variety of efforts to address the child's struggles, but the trial court ultimately found her efforts insufficient. According to plaintiff, he wished to place the child in Teen Challenge, which was located in "central Indiana" and "specializes in young girls" "that have, like, sexual addictions and that are cutting themselves," because "the Lord told [him] to do it."[6] After a hearing, the circuit court granted plaintiff's motion, removing the child from public school and placing her into Teen Challenge. Defendant's motion for reconsideration was subsequently granted, but the circuit court ultimately concluded that its original decision was correct. This appeal followed.

"Under the Child Custody Act, MCL 722.21 *et seq*., 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010), quoting MCL 722.28. "Above all, custody disputes are to be resolved in the child's best interests," *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001), and "[t]his standard cannot be abrogated, even in fairness to the parties," *Soumis v Soumis*, 218 Mich App 27, 34; 553 NW2d 619 (1996). "The Child Custody Act 'applies to all circuit court child custody disputes and actions, whether original or incidental to other actions,' " and it "provides that when parents share joint legal custody—as the parties do here—'the parents shall share decision-making authority as to the important decisions affecting the welfare of the child.' " *Pierron*, 486 Mich at 85, quoting MCL 722.26(1). "[W]here the parents as joint custodians cannot agree on important matters such as education, it is the court's duty to determine the issue in the best interests of the child." *Lombardo v Lombardo*, 202 Mich App 151, 159; 507 NW2d 788 (1993).

> [W]hen considering an important decision affecting the welfare of the child, the trial court must first determine whether the proposed change would modify the established custodial environment of that child. In making this determination, it is the child's standpoint, rather than that of the parents, that is controlling. If the proposed change would modify the established custodial environment of the child, then the burden is on the parent proposing the change to establish, by clear and convincing evidence, that the change is in the child's best interests. Under such circumstances, the trial court must consider all the best-interest factors because a case in which the proposed change would modify the custodial environment is essentially a change-of-custody case. On the other hand, if the proposed change would *not* modify the established custodial environment of the child, the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests. In addition, under those circumstances, although the trial court must determine whether each of the best-interest factors applies, if a factor does not apply, the

---

[6] An exhibit provided by plaintiff below, which appears to be part of a printed page from a website, describes the program, in pertinent part, as follows: "Indiana Teen Challenge is a residential boarding school program for girls ages 13-17. We work with girls involved in alcohol, drug and substance abuse and behavioral problems such as cutting and bulimia."

trial court need not address it any further. In other words, if a particular best-interest factor is irrelevant to the question at hand, i.e., whether the proposed change is in the best interests of the child, the trial court need not say anything other than that the factor is irrelevant. [*Pierron*, 486 Mich at 92-93 (emphasis in original).]

In this case, although a hearing was held, it is apparent that the circuit court committed clear legal error. During the January 7, 2016 hearing, the circuit court was clear in expressing its belief that it need not determine whether the proposed change would modify the established custodial environment:

The questions, I think, before the Court are not overtly custody questions. I think [defendant's counsel] correctly surmised the two questions before Court in his brief. Should the child continue at [public school] and should the minor child continue to reside with Defendant. The Court does not believe it has to change the original custody order in order to reach a decision in this case. I believe that the parties ought to leave here today still with joint legal and joint physical custody.

However, the Court is not at all satisfied that the child should remain in the care and custody of the Mother . . . .

\* \* \*

The Court therefore orders as follows. Joint legal and joint physical custody shall remain in place. The child should be enrolled at Teen Challenge in Indiana as soon as possible. The couple's tax refund should be used to pay for the expenses. If a parent has to advance expenses from their own funds in the meantime, then that parent should be reimbursed those funds as soon as the tax refund arrives. The parties are to file their return for 2014 as soon as possible but not later than ten days from today's date. [Plaintiff] shall have authority to sign all document's necessary to oversee [the child]'s attendance, her medical matters, her financial matters, including collections of and . . . also personal matters, such as collection of all items need in preparation for [the child]'s attendance at Teen Challenge.

\* \* \*

Counsel, I point out I've not determined . . . environmental. I've not dealt with a threshold issue of whether there's been a change of circumstances. This is not a custody case. I've not determined who had the family environment or whatever. I don't think those issues are relevant. This is more an education type situation.

However, "[w]hen resolving important decisions that affect the welfare of the child," which includes educational decisions, "the court *must* first consider whether the proposed change would modify the established custodial environment." *Pierron*, 486 Mich at 85 (emphasis added).[7] Thus, the circuit court's failure to do so constituted a misapplication of the applicable law, and a remand for a new hearing for that reason would ordinarily be required.

In this case, however, a remand for that reason would not necessarily be required because, in addressing defendant's motion for reconsideration, the circuit court considered whether the proposed change would modify the established custodial environment as it should have done originally:

> With regard to the legality of ordering the child down to Teen Challenge, the Court's satisfied it was the right decision. The Court is satisfied that it was the lawful decision. I do not believe that it affected the custodial environment. When it comes to custodial environment, I think, Vodvarka is one of the chief cases. I was going through one of my files, here, to see if I have that case in front of me.
>
> But it's the Court's opinion that we have not changed either the legal or physical custody of these parties. But the order that I signed sending the child down to Indiana, frankly, reiterated that the parties maintain . . . joint legal and joint physical custody of the minor child. I think, it is equivalent to a parent sending their child to band camp, or to a military school for a longer duration than what a band camp probably would be, or most any other place.

Thus, on reconsideration, the circuit court correctly completed the first step of the applicable analysis, i.e., determining whether the proposed change would modify the established custodial environment. *Pierron*, 486 Mich at 85-86, 92. However, even if the proposed change would not modify the established custodial environment, the circuit court was nevertheless required to address the best interests of the child, and it failed to adequately do so. *Id*. Thus, the circuit court's failure to do so constituted a misapplication of the applicable law, and a remand for a new hearing for that reason is required.[8] See *Foskett v Foskett*, 247 Mich App 1, 12; 634 NW2d

---

[7] It appears, given the context, that the circuit court's references to "[e]nvironmental" and a "family environment" were actually references to an established custodial environment. With that understanding, it is apparent that the circuit court assumed it need not decide that "threshold issue."

[8] The circuit court did mention the best interests of the child, stating as follows: "In this case, I have so many different factors that it's overwhelming. I think this child is at risk. When we talk about the best interests for this child, ultimately that's what I'm trying to do in every one of these domestic cases." This statement, in our view, is insufficient.

363 (2001); see also *Rivette v Rose-Molina*, 278 Mich App 327, 330-333; 750 NW2d 603 (2008).[9]

      Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Jane E. Markey
/s/ Colleen A. O'Brien

---

[9] "On remand, the trial court should consider up-to-date information and any other changes in circumstances arising since the trial court's original custody order." *Kessler v Kessler*, 295 Mich App 54, 63; 811 NW2d 39 (2011) (citation and internal quotation marks omitted). Additionally, we would note that at one point during the proceedings, a hearing referee appointed a guardian ad litem to represent the child in this matter (who recommended that the child remain in defendant's care), but the record is unclear as to whether the circuit court continued that appointment. Given the instability of the child's life—plaintiff left her with defendant in September 2015 because he could not "control" her, she was removed from defendant's custody and ordered to participate in a boarding school approximately four months later, and she is now ordered to return to plaintiff's care as the parent with sole physical custody—we encourage the circuit court to consider whether a guardian ad litem is necessary in hopes of better protecting the child's best interests going forward.