*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DOUGLAS LANCASTER and DIANA
LANCASTER,

　　　　　　Plaintiffs-Appellants,

and

BRIANNA LANCASTER,

　　　　　　Plaintiff,

v

COSMOPOLITAN HOMES, INC., and DAN
WICKER,

　　　　　　Defendants-Appellees,

and

VLADISLAV SAFIR, ALVERS, LLC, CITY
TRENDS REALTY, LLC, and YOUSSEF
DAKROUB,

　　　　　　Defendants.

UNPUBLISHED
December 29, 2020

No.　347678
Wayne Circuit Court
LC No.　17-003533-CH

Before: STEPHENS, P.J., and SERVITTO and LETICA, JJ.

PER CURIAM.

　　　　Plaintiffs, Douglas and Diana Lancaster ("plaintiffs"), appeal as of right the trial court's order granting a directed verdict in favor of defendants Cosmopolitan Homes, Inc., and Dan Wicker (collectively "defendants"), following a jury trial in this action involving claims of fraud, innocent misrepresentation, silent fraud, breach of contract, and violation of the Seller's Disclosure Act (SDA), MCL 565.951 *et seq.*, arising from plaintiffs' purchase of a residential home from

-1-

defendant Cosmopolitan Homes. For the reasons set forth in this opinion, we affirm in part, reverse in part, and remand for further proceedings.

## I.  BACKGROUND

This case arises from plaintiffs' February 2016 purchase of a house in Taylor, Michigan, from defendant Cosmopolitan Homes.  Plaintiffs purchased the home for use by their granddaughter, Brianna Lancaster (Brianna)[1], but Brianna was not a party to the purchase agreement or a record titleholder of the property.  Before plaintiffs purchased the home, defendants provided a seller's disclosure statement (SDS) in which they represented that there was no known history of water in the home's basement.  A few months after Brianna moved into the home, in the spring of 2016, the walls in the basement began to leak water following a heavy rainfall.  Brianna informed Wicker of the water leaks and while he promised to make repairs, het never followed through.  In February 2017 plaintiffs and Brianna filed this action against Cosmopolitan Homes, its principal Wicker, and other named defendants,[2] alleging different theories of fraud, violation of the SDA, breach of contract, and intentional infliction of emotional distress, and seeking exemplary damages.

In May 2018, the trial court granted in part Cosmopolitan Homes and Wicker's motion for summary disposition under MCR 2.116(C)(5) and Brianna was dismissed as a party plaintiff for lack of standing.  The case proceeded to trial against Cosmopolitan Homes and Wicker.  Plaintiffs brought an emergency motion for an adjournment of trial because one of their key witnesses, Cletis Nichols, the  son-in-law of the persons who sold the property to Cosmopolitan Homes, was unable to testify on the day scheduled.  The witness had originally been scheduled to appear on January 30th, but due to inclement weather and the court closing was rescheduled for February 4th.  Plaintiffs requested adjournment for 2 days to a time when Nichols agreed he could and would appear.   Nichols had provided an affidavit in opposition to the pre-trial motion for summary disposition in which he indicated that he had personally informed Wicker about the history of water damage at the home.  In his affidavit, he had also described the physical signs of water damage that were present when Wicker took possession of the home from Nichols' in-laws.  The trial court denied the motion.  Plaintiffs' counsel thereafter requested that the trial court recuse itself because of judicial bias, and the trial court denied that request also.  At trial, defendants moved for and the court granted a directed verdict on plaintiffs' claim.  On appeal, plaintiffs now challenge the trial court's decisions on the motion for partial summary disposition, their request for adjournment, their request for recusal, and the motion for directed verdict.

## II.  ADJOURNMENT

---

[1]  We refer to Brianna Lancaster by her first name only due to her having the same last name as her grandparents, the plaintiffs.

[2] The other defendants were dismissed before trial.  Plaintiffs do not challenge the dismissal of the other defendants and they are not parties to this appeal.

Plaintiffs first argue that the trial court abused its discretion by denying their motion for a brief adjournment to enable them to present the testimony of Cletis Nichols, who was unable to testify on the day scheduled. We agree.

## A. STANDARD OF REVIEW

MCR 2.503(D)(1) provides that "[i]n its discretion the court may grant an adjournment to promote the cause of justice." This Court reviews a trial court's decision with regard to a request for an adjournment for an abuse of discretion. *Soumis v Soumis*, 218 Mich App 27, 32; 553 NW2d 619 (1996). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Slis v State*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket Nos. 351211 & 351212); slip op at 11, lv pending.

## B. ANALYSIS

MCR 2.503, which governs requests for adjournments of trial, states, in pertinent part:

**(C) Absence of Witness or Evidence**.

(1) A motion to adjourn a proceeding because of the unavailability of a witness or evidence must be made as soon as possible after ascertaining the facts.

(2) An adjournment may be granted on the ground of unavailability of a witness or evidence only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence.

(3) If the testimony or the evidence would be admissible in the proceeding, and the adverse party stipulates in writing or on the record that it is to be considered as actually given in the proceeding, there may be no adjournment unless the court deems an adjournment necessary.

Cases in which a trial court did not abuse its discretion by declining to grant an adjournment "have always involved some combination of numerous past continuances, failure of the movant to exercise due diligence, and lack of any injustice to the movant." *Tisbury v Armstrong*, 194 Mich App 19, 20; 486 NW2d 51 (1991). A trial court's decision to deny an adjournment on the basis of the absence of a witness is appropriate if the moving party failed to exercise due diligence to secure the presence of the witness and has not provided an adequate explanation for their absence. *Id*.

Here, the trial court did not review the requirements of the court rule or articulate how its ruling complied with the requirements of the court rule. See *People v Jackson*, 467 Mich 272, 277; 650 NW2d 665 (2002) (The Michigan Supreme Court noted that the trial court, when denying an adjournment to secure the witness's presence, did not address the requirements of MCR 2.503(C) or consider how the prosecution's efforts to secure the witness's presence did not meet those requirements.) Additionally, plaintiffs had not sought any prior adjournments to secure the testimony of Nichols, and Nichols had given plaintiffs' counsel no prior indication that he would not appear to testify in accordance with the subpoena served on him. Finally, as the trial court acknowledged, Nichols's testimony was pivotal to plaintiffs' claims of fraud and violation of the SDA. A principal issue at trial was whether defendants had knowledge of a history of water

damage at the home before they sold the home to plaintiffs. As noted earlier, Nichols had signed an affidavit directly addressing this issue. Indeed, that was the principal issue on which the trial court granted defendants' motion for a directed verdict. As explained below, as part of this Court's analysis of the trial court's directed verdict rulings, a directed verdict of the fraud and SDA claims would not have been warranted if Nichols's proposed testimony had been presented at trial. Plaintiffs were placed in a position in which they could not prove these claims without his testimony, and the trial court's decision effectively ended their lawsuit. *Tisbury*, 194 Mich App at 21. Additionally, defendants did not demonstrate how they would have been prejudiced by a brief adjournment. *Id*.

Defendants argue that the trial court properly exercised its decision to deny an adjournment of trial because (1) Nichols was not named as a witness in plaintiffs' witness list, (2) allowing Nichols to testify would have been unduly prejudicial to defendants because his testimony was not relevant, and (3) Nichols should not be permitted to testify because any damages that plaintiffs incurred as a result of the alleged water damage in the home were speculative and remote. We disagree with these arguments, none of which served as a basis for the trial court's decision. The proposed testimony of Nichols was indeed relevant under MRE 401,[3] because it was probative of Wicker's knowledge of the condition of the home before defendants sold the home to plaintiffs, in particular whether Wicker had knowledge of a history of water damage at the home and falsely represented in the SDS that there was no history of water in the home. Nichols's testimony was also relevant to whether Wicker knew that any alleged representations regarding the condition of the home were false, and whether Wicker suppressed the truth with the intent to defraud, as required to establish a claim of silent fraud. *Titan Ins Co v Hyten*, 491 Mich 547, 555, 557; 817 NW2d 562 (2012). Further, the record demonstrates that defendants were well aware of the substance of Nichols's proposed testimony because his affidavit was previously provided in support of plaintiffs' response to defendants' January 2018 motion for summary disposition. Finally, while defendants assert that plaintiffs' alleged damages were speculative and remote, Nichols's testimony was not being offered on the issue of damages. In sum, defendants have not provided a persuasive reason for concluding that an adjournment was not warranted or for finding that they would have been unfairly prejudiced by a brief adjournment to allow Nichols to testify.

For the foregoing reasons, the trial court abused its discretion by denying plaintiffs' motion for an adjournment. Accordingly, we reverse and remand for a new trial with respect to plaintiffs' claims for fraud, innocent misrepresentation, silent fraud, and violation of the SDA.[4]

## III. DIRECTED VERDICT

---

[3] "Relevant evidence" is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

[4] As explained in our analysis of the trial court's directed verdict rulings, Nichols's testimony was not relevant to plaintiffs' breach-of-contract claim, and the trial court did not err by otherwise directing a verdict on that claim. Accordingly, that claim was properly dismissed and plaintiffs are not entitled to a new trial on that claim.

Plaintiffs next argue that the trial court erred by granting defendants' motion for a directed verdict. To the extent that the trial court's grant of defendants' motion as to fraud, innocent misrepresentation, silent fraud and breach of the SDA was based on the evidence presented at trial, it was legally correct. However, the lack of evidence was occasioned by the court's error in denying a 2-day adjournment to allow Nichols to testify. Had Nichols testified at trial consistent with his pretrial affidavit, defendants would not have been entitled to a directed verdict with respect to plaintiffs' claims for fraud, innocent misrepresentation, silent fraud, and violation of the SDA. However, Nichols had no relevant or competent testimony regarding the breach of contract claim and the directed verdict on that claim was not rendered in error.

## A. STANDARD OF REVIEW

We review a trial court's decision on a motion for a directed verdict de novo. *Nahshal v Freemont Ins Co*, 324 Mich App 696, 718; 922 NW2d 662 (2018). A directed verdict should be granted only if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that the moving party is entitled to judgment as a matter of law. *Id*. at 719-720. "If reasonable persons, after reviewing the evidence in the light most favorable to the nonmoving party, could honestly reach different conclusions about whether the nonmoving party established his or her claim, then the question is for the jury." *Id*. (citation omitted).

## B. ANALYSIS

In *Titan Ins Co*, 491 Mich at 555, the Michigan Supreme Court set forth the requirements that must be satisfied to make out a prima facie claim of actionable fraud, which is also referred to as fraudulent misrepresentation. To establish a claim of fraudulent misrepresentation, a plaintiff must demonstrate:

> (1) That [the] defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery. [*Id*.]

The Court in *Titan Ins Co* further observed that

> the doctrine of innocent misrepresentation is also well settled in Michigan law, recognizing,

>> by a long line of cases there was in fact a misrepresentation, though made innocently, and its deceptive influence was effective, the consequences to the plaintiff being as serious as though it had proceeded from a vicious purpose, he would have a right of action for the damages caused thereby either at law or in equity. [*Id.* at 556 (citations omitted).]

Moreover, silent fraud is a legal doctrine that provides that when a legal or equitable duty of disclosure exists, " '[a] fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood, and courts have not hesitated to sustain recoveries where the truth has been suppressed with the intent to defraud.' " *Id.* at 557, quoting *Tompkins v Hollister*, 60 Mich 470, 483; 27 NW 651 (1886).

With regard to a claim of breach of contract:

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in [injury] to the party claiming breach." [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 164; 934 NW2d 665 (2019) (citation omitted).]

The SDA requires a seller of property to answer questions and report known conditions affecting the property. MCL 565.957; *Bergen v Baker*, 264 Mich App 376, 383; 691 NW2d 770 (2004). Liability may be imposed on a seller of property for misrepresentations or omissions in a disclosure statement. *Id.* at 385.

With respect to plaintiffs' claim for actionable fraud, the SDS that Wicker signed and dated September 18, 2015, contained the following question regarding the condition of the home's basement:

Property conditions, improvements, and additional information:

1. Basement/Crawlspace: Has there been evidence of water?

Wicker, on behalf of Cosmopolitan Homes, answered this question, "no." The SDS further states that "Seller certifies that the information in this Statement is true and correct to the best of Seller's knowledge as of the date of Seller's signature." Plaintiffs contend that Wicker misrepresented the condition of the basement by denying that there was any evidence of water in the basement because he had actual knowledge of a history of water problems and damage.

As the trial court found, the record at trial did not contain any evidence that Wicker *knew* that his representation—that there was no evidence of water in the basement—was false when it was made. Therefore, the trial court did not err by granting a directed verdict on this claim based on the evidence presented at trial. As previously indicated, however, the trial court erred by denying plaintiffs' motion for an adjournment to be able to present Nichols's testimony and, if he had testified consistently with his affidavit, a directed verdict would not have been warranted with respect to this claim.

In his February 2017 affidavit, Nichols averred that there was "extensive evidence of water damage in the basement at the time the home was sold to Mr. Wicker that it would have been impossible for one to not be aware of the significant issue." Nichols described that the tile on the basement floor was "popping up" because of the water damage, and the basement walls contained dark stains from water leaking into the basement. Nichols explained that puddles of water had formed in an area in which a work bench was placed in the basement, and the work bench was removed to allow for renovations to the basement, and "it would have been impossible for [Wicker] to not see the evidence of leaking water." Nichols also recounted that beginning in May 2015,

Wicker and his work crew performed repairs on the home for a period of six months, including replacing the roof on the home. If Nichols had been able to testify at trial consistently with his affidavit, his testimony would have established a question of fact concerning whether Wicker knowingly made a false representation regarding the condition of the basement—specifically whether there had been evidence of water in the basement—with the intention that Douglas and Diana Lancaster, as purchasers of the property, would rely on this representation in deciding to purchase the home. *Titan*, 491 Mich at 555.

The same analysis applies to the claims of innocent misrepresentation, silent fraud, and violation of the SDA. Again, because there was no evidence at trial that there was water damage in the home at the time the property was sold to Douglas and Diana Lancaster, or what Wicker knew about the condition of the basement at the time the property was sold, the trial court did not err by granting a directed verdict on these claims on the basis of the evidence presented at trial. Again, however, if Nichols's proposed testimony had been presented at trial, a directed verdict of these claims would not have been warranted. With regard to the claim of innocent misrepresentation, Wicker's statement in the SDS is evidence that he represented that there was no evidence of water in the basement. Nichols's proposed testimony, as summarized earlier, would have created factual issues with regard to whether: (1) Wicker made a false representation of the condition of the basement that Douglas and Diana relied on in purchasing the home, and (2) the allegedly innocent misrepresentation was made in such a manner that it inured to the benefit of Wicker and Cosmopolitan Homes. *M & D, Inc v WB McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998). Nichols's proposed testimony also would have supported a claim of silent fraud because, under circumstances in which Wicker had an obligation to disclose any issues with leaking water in the home's basement in the SDS, Nichols's testimony would have raised factual disputes regarding whether Wicker knowingly failed to inform plaintiffs of the true condition of the basement, and whether he knowingly suppressed the truth with the requisite fraudulent intent. *Titan Ins Co*, 491 Mich at 557. Similarly, Nichols's testimony that Wicker was in fact aware of the water issues in the basement, contrary to his representation in the SDS, would have created a question of fact regarding whether defendants violated the SDA. *Bergen*, 264 Mich App at 383-385.

With regard to the breach-of-contract claim, however, the trial court properly directed a verdict with regard to this claim and Nichols's proposed testimony would not have altered that decision. In interpreting a contract, we apply the following well-settled rules of contract interpretation:

> [The Court's] primary goal in interpreting any contract is to give effect to the parties' intentions at the time they entered into the contract. [The Court] determine[s] the parties' intent by interpreting the language of the contract according to its plain and ordinary meaning. If the language of a contract is unambiguous, [the Court] must enforce the contract as written. [*Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 85-86; 878 NW2d 816 (2016).]

The purchase agreement between Douglas and Diana Lancaster, as purchasers, and Cosmopolitan Homes, as seller, provided, in pertinent part:

-7-

12. AS IS:  Buyer understands that Buyer is purchasing a used structure in "AS-IS" condition.

(A)  Buyer has examined the premises and is satisfied with its condition;

(B)  Broker and Broker's Agents are not contractors and cannot make any representations regarding the physical condition of the premises;

(C)  Buyer has not relied on any representation of the Broker or the Broker's agents.

(D)  Buyer hereby knowingly waives, releases, and relinquishes all claims or causes of action against Broker and Broker's Agents arising out of the condition of the property or arising out of this Contract to Purchase.

Because the purchase agreement expressly provides that the home was being sold to Douglas and Diana Lancaster in an "AS-IS" condition, and that they had examined the home and were satisfied with its condition, the record does not support a finding that Cosmopolitan Homes breached the terms of the purchase agreement, regardless of whether Wicker was aware of the water issues with the basement.  Additionally, while plaintiffs argue that the SDS was merged into the purchase agreement, this contention is not supported by the terms of the purchase agreement.  With respect to the SDS, the purchase agreement provides, in pertinent part:

18.  SELLER DISCLOSURE:  Buyer acknowledges receipt of Seller's Disclosure Statement as of 9/22/15 [at] 10 am.  Seller hereby gives permission to disseminate the Seller's Disclosure Statement to lender, appraiser, municipality, etc.

The merger clause of the purchase agreement further provides:

13.  MERGER CLAUSE  The contract to purchase supersedes any and all understandings and agreements and constitutes the entire Agreement between [the] Parties hereto and Brokers . . . and no oral representations or statements shall be considered a part hereof.

Therefore, the clear terms of the purchase agreement refute plaintiffs' claim that the SDS was merged into the purchase agreement.

Further, Nichols was not a party to the purchase agreement and his testimony would not have been relevant to whether the purchase agreement was breached.  Thus, the trial court's error in denying plaintiffs' motion to adjourn trial in order to secure Nichols's testimony did not affect

the trial court's decision to direct a verdict on the breach-of-contract claim. Therefore, we affirm the trial court's directed verdict ruling with respect to the breach-of-contract claim.[5]

## IV. JUDICIAL BIAS

Plaintiffs also argue that the trial court should have disqualified itself because it was biased against plaintiffs' counsel. We disagree.

### A. STANDARD OF REVIEW

In reviewing a claim of judicial bias, we review the trial court's factual findings for an abuse of discretion, but its application of the law to the facts is reviewed de novo. *Van Buren Twp v Garter Belt, Inc*, 258 Mich App 594, 598; 673 NW2d 111 (2003).

### B. ANALYSIS

A party who is seeking disqualification of a judge on the basis of bias or prejudice against that party "must overcome a heavy presumption of judicial impartiality." *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996). Under MCR 2.003(C)(1)(a), a judge can be disqualified if "[t]he judge is biased or prejudiced for or against a party or attorney." However, to meet the requirement of this court rule, the party seeking disqualification must establish "*actual* bias." *Cain*, 451 Mich at 495. The bias contemplated by MCR 2.003(C)(1)(a) has historically been interpreted to be personal and extrajudicial in nature, meaning the bias "must have its origin in events or sources of information gleaned outside the judicial proceeding[.]" *Cain*, 451 Mich at 495; *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009). To the extent that plaintiffs base their argument on the trial court's rulings against them, judicial rulings, in and of themselves, will rarely constitute a showing of bias, unless they reflect a deeply seated antagonism against a party that makes it essentially impossible for the trial court to render a fair judgment. *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001). As explained in *Armstrong*:

> Repeated rulings against a litigant, even if erroneous, are not grounds for disqualification. The court must form an opinion as to the merits of the matters before it. This opinion, whether pro or con, cannot constitute bias or prejudice. [*Id.*

---

[5] We note that plaintiffs also fault the trial court for not admitting a home inspection report at trial. The record discloses that the trial court refused to admit the report because it was not produced during discovery and was first presented to defendants at trial. It is well established that a trial court has discretion to exclude evidence that is not produced during discovery. *Setterington v Pontiac Gen Hosp*, 223 Mich App 594, 605; 568 NW2d 93 (1997). We find this issue abandoned on appeal for plaintiffs' failure to develop a meaningful argument on this issue or cite legal authority in support of their claim that the evidence should not been admitted. *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).

at 597-598, quoting *Mahlen Land Corp v Kurtz*, 355 Mich 340, 350; 94 NW2d 888 (1959).]

See also *Butler v Simmons-Butler*, 308 Mich App 195, 228; 863 NW2d 677 (2014) (recognizing that repeated rulings adverse to a party, even if in error, cannot form the basis for disqualification on the basis of bias or prejudice). Similarly, comments made by the trial court during trial that are hostile to counsel or a party ordinarily will not rise to the level of "disqualifying bias." *Kern v Kern-Koskela*, 320 Mich App 212, 232; 905 NW2d 453 (2017).

Under the Due Process Clause, disqualification on the basis of judicial bias will only occur in the most extreme and rare cases in which the likelihood of judicial bias is too high to be "constitutionally tolerable." *Cain*, 451 Mich at 498, quoting *Crampton v Dep't of State*, 395 Mich 347; 235 NW2d 352 (1975). Such rare scenarios include those in which the trial court has a pecuniary interest in the outcome of the case, is enmeshed in other matters involving the petitioner, has been on the receiving end of abuse and criticism from one of the parties, or has prejudged the case on the basis of prior involvement as an initial decisionmaker, accuser, investigator or fact-finder. *Cain*, 451 Mich at 498.

At trial, plaintiffs' counsel moved for the trial court to recuse itself after the court denied plaintiffs' motion for an adjournment. In support of the claim that the court was biased, plaintiffs' counsel principally cited a comment by the trial court during a sidebar conference in which the court remarked that plaintiffs' counsel was "a good [boy] even though he was not Jewish." The court did not deny making the remark, but vehemently denied any offensive intent. Although the remark was wholly inappropriate, it does not demonstrate the requisite *actual bias* necessary to warrant disqualification under MCR 2.003. *Cain*, 451 Mich at 495. The isolated comment, made during a sidebar conference and outside the presence of the jury, does not demonstrate bias against plaintiffs' counsel that is personal and extrajudicial in nature, or bias that can be characterized as "hav[ing] its origin in events or sources of information gleaned outside the judicial proceeding[.]" *Id*.; *In re MKK*, 286 Mich App at 566. Similarly, the isolated remark does not demonstrate hostility toward plaintiffs' counsel of a level to warrant disqualification. *Kern*, 320 Mich App at 232. Nor is this case one in which disqualification was necessary under the Due Process Clause because the facts do not suggest one of the rare scenarios requiring disqualification. Specifically, there is no indication that the court had a pecuniary interest in the outcome of the case, that it was enmeshed in other matters involving plaintiffs' counsel or plaintiffs, or that the court had prejudged the case on the basis of prior involvement as an initial decisionmaker, accuser, investigator, or fact-finder. *Cain*, 451 Mich at 498.

In sum, the record does not support plaintiffs' claim that the trial court was biased against plaintiffs or plaintiffs' counsel.

## V. THIRD-PARTY BENEFICIARY

In their last argument, plaintiffs contend that the trial court erred by granting defendants' motion for summary disposition and dismissing Brianna as a party to this action. We disagree.

### A. STANDARD OF REVIEW

This Court reviews de novo the trial court's decision on a motion for summary disposition. *Wood v Detroit*, 323 Mich App 416, 419; 917 NW2d 709 (2018). Defendants moved for summary disposition of Brianna Lancaster's claims under MCR 2.116(C)(5) (party lacks the legal capacity to sue). In *Wortelboer v Benzie Co*, 212 Mich App 208, 213; 537 NW2d 603 (1995), this Court explained:

> When reviewing a ruling on a motion under MCR 2.116(C)(5), we must consider the pleadings, depositions, admissions, affidavits, and other documentary evidence submitted by the parties. MCR 2.116(G)(5). We review the trial court's denial of summary disposition on this basis de novo and examine the entire record to determine whether the defendant is entitled to judgment as a matter of law. *Dep't of Social Services v Baayoun*, 204 Mich App 170, 173; 514 NW2d 522 (1994).

To the extent that defendants frame this issue as a question of standing, whether a party has standing is a question of law that this Court reviews de novo. *Groves v Dep't of Corrections*, 295 Mich App 1, 4; 811 NW2d 563 (2011).

## B. ANALYSIS

The sole basis for plaintiffs' argument that Brianna's dismissal was improper is that Brianna had standing to bring her claims as a third-party beneficiary of the purchase agreement between Douglas and Diana Lancaster, as purchasers, and Cosmopolitan Homes, as seller. We disagree.

MCL 600.1405 provides, in pertinent part:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>
> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.

A third-party beneficiary is able to enforce a promise against the promisor because the third-party beneficiary "stands in the shoes" of the promisee. *Farm Bureau Ins Co v TNT Equip, Inc*, 328 Mich App 667, 674; 939 NW2d 738 (2019). In *Schmalfeldt v North Pointe Ins Co*, 469 Mich 422, 428; 670 NW2d 651 (2003), our Supreme Court explained that under the plain language of MCL 600.1405, only intended, and not incidental, third-party beneficiaries may sue for breach of a promise. The Court stated:

> A person is a third-party beneficiary of a contract only when that contract establishes that a promisor has undertaken a promise directly to or for that person. MCL 600.1405; *Koenig v South Haven*, 460 Mich 667, 677; 597 NW2d 99 (1999). By using the modifier directly, the Legislature intended to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract. *Id*. An objective standard is to be used to determine,

-11-

from the form and meaning of the contract itself, *Kammer Asphalt v East China Twp*, 443 Mich 176, 189; 504 NW2d 635 (1993) (citation omitted), whether the promisor undertook to give or to do or to refrain from doing something directly to or for the person claiming third-party beneficiary status, [*Brunsell v Zeeland*, 467 Mich 293, 298; 651 NW2d 388 (2002).] [*Schmalfeldt*, 469 Mich at 428.]

In *Schmalfeldt*, *id*. at 428-429, the Court recognized that it had repeatedly held that the language of the contract itself will determine whether the parties agreed to do, or refrain from doing something, directly to or for the benefit of a third party as contemplated by MCL 600.1405(1). See also *Covenant Med Ctr Inc, v State Farm Mut Auto Ins Co*, 500 Mich 191, 217 n 39; 895 NW2d 490 (2017) (recognizing under MCL 600.1405(1) that a person is a third-party beneficiary only if the contract demonstrates that the promisor has undertaken a promise "directly" to or for the benefit of the promisee).

We agree that Brianna does not qualify as a third-party beneficiary of the purchase agreement. Brianna was not a party to the purchase agreement, she is not referenced in the agreement, and there is nothing within the four corners of the agreement that indicates that defendants undertook a promise directly to or for Brianna's benefit. MCL 600.1405(1); *Schmalfeldt*, 469 Mich at 428. Regardless of plaintiffs' intent to purchase the home for Brianna's use, or defendants' knowledge of that intent, to be considered a third-party beneficiary of an agreement, it must be apparent from the terms of the agreement itself that a promisor has undertaken a promise directly to or for the benefit of the third party. The purchase agreement lists only Douglas and Diana as the buyers and it does not contain any indication that the scope of the parties' contractual undertakings encompassed Brianna. The documentation produced in support of and in response to defendants' motion for summary disposition indicates that Brianna was essentially a tenant or a permissive user of the home that Douglas and Diana purchased from defendants for Brianna's benefit. Evidence was presented that Brianna was making the mortgage payments on the home, but that was pursuant to her own arrangement with Douglas and Diana. The home was titled in the names of Douglas and Diana Lancaster, and they were the mortgagors. There is nothing in the purchase agreement that obligated defendants to undertake any promise for Brianna's benefit.

Further, although one of the ways to establish standing is when the party has a legal cause of action, *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010), plaintiffs did not submit any evidence in response to defendants' motion for summary disposition that Wicker made any representations to Brianna regarding the condition of the home before it was purchased by Douglas and Diana Lancaster. Although Brianna apparently was the one who paid for the repairs to the water damage to the home, there was no evidence at the time the trial court decided the motion for summary disposition that she had any legal interest in the home itself.

Accordingly, the trial court did not err by granting defendants' motion for summary disposition and dismissing Brianna as a party plaintiff.

## VI. CONCLUSION

We affirm the trial court's order granting in part defendants' motion for summary disposition and dismissing Brianna Lancaster as a party plaintiff. However, we conclude that the

trial court erred by denying plaintiff's motion for an adjournment to allow Cletis Nichols to testify at trial. Because Nichols's testimony was not relevant to plaintiffs' breach-of-contract claim and the trial court did not otherwise err by directing a verdict in favor of defendants with respect to that claim, we affirm the trial court's dismissal of the breach-of-contract claim. However, because the record demonstrates that Nichols's proposed testimony could have established a question of fact with regard to plaintiffs' claims of fraud, innocent misrepresentation, silent fraud, and violation of the SDA, we reverse and remand for a new trial with respect to those claims.[6]

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Anica Letica

---

[6] We deny defendants' request in their brief for an award of sanctions. An award of sanctions is governed by MCR 7.216(C)(1), which requires that a motion for sanctions be filed in this Court under MCR 7.211(C)(8); "a brief on appeal is insufficient to request sanctions." *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 60; 698 NW2d 900 (2005).